## MARTIN GORE *versus* SIMON FITCH.

A grant of a "perpetual right of way into and through a passage way twelve feet in width, lying in the rear of houses numbered 81 and 83, into Congress street," conveys, in the absence of other controlling evidence, a right of way twelve feet wide, one line of which is identical with the rear line of lots 81 and 83, extended to Congress street.

And no part of such line can be subsequently changed by the grantor alone.

ON REPORT from *Nisi Prius*, the full Court to render judgment by nonsuit or default, according to the legal rights of the parties.

CASE, for obstructing an alleged right of way. Prior to May 19, 1849, the premises of both parties were owned by John Neal, who then conveyed to L. D. M. Sweat the lot now owned by the plaintiff, "and a perpetual right of way into and through a passage way twelve feet in width, lying in the rear of houses No. 81 and 83, into Congress street." Then the passage way was in the following form : —

the passage way being 12 feet wide in the rear of houses

81 and 83, but 30 to 40 feet wide at its outlet into Congress street.

From Sweat, through sundry mesne conveyances, the premises came to the plaintiff, with the right of way expressed in the same words.

In May, 1860, Neal conveyed to C. R. & L. E. Frost, the defendant's immediate grantors, a small piece of land at the north-west side of the outlet of said passage way, bounded easterly " by said passage way, now changed." Frosts fenced the lot thus purchased, when the passage way assumed the following form : —

The remaining material facts sufficiently appear in the opinion.

*F. Fox*, for the plaintiff, cited Washburn on Easements, 169 ; *Bannon* v. *Angier*, 2 Allen, 128.

*J. & E. M. Rand*, for the defendant.

None of the deeds refer to any plan indicating any particular shape for the passage way, whether it shall be parallel with State street or not. The easterly line of the passage way was never parallel with State street. There was no laying out of the way in this particular course or shape, otherwise than by Neal's permitting it to so remain, with an outlet twice as wide as the deeds call for.

After the outlet was fenced on the west it remained of a uniform width of twelve feet. Plaintiff still has what his deed gives him, a passage way twelve feet wide, lying in

the rear of houses 81 and 83, and extending to Congress street. He claims one, a portion of which is 30 to 40 feet wide, basing his claim upon the mere circumstance, that Neal has unnecessarily permitted a portion to be of that extra width. Nothing but the width and general direction are given in the deeds. Why cannot Neal fence off the surplus on one side, as well as on the other? If on neither, then a twelve foot conveyance will pass thirty feet. Same surface is used now as formerly. The grantees can enjoy by the grant but a twelve foot passage way in the rear of houses 81 and 83 to Congress street, all of which the plaintiff daily uses.

TAPLEY, J. — This is an action on the case for a disturbance of a right of way. The defendant claims to own the premises in question free from any incumbrance. Both parties claim their rights under the same grantor, John Neal.

The plaintiff claims under a deed from said Neal to L. D. M. Sweat, dated May 19, 1849, and through several mesne conveyances to himself.

The defendant claims under a deed from said Neal to Charles R. and Luther E. Frost, dated May 4, 1860, and from said Frosts to himself dated February 17, 1863.

The deed of Neal to L. D. M. Sweat of May 19, 1849, conveys " a perpetual right of way into and through a passage way, twelve feet in width, lying in the rear of houses numbered 81 and 83, into Congress Street." The rights of the parties depend upon the construction of this deed.

In the absence of any other controlling evidence, this deed conveys a right of passage *immediately* in the rear of lots 81 and 83, and extended in the *same* direction to Congress Street; the grantor owning the land over which it passed.

There is no rule which authorizes any other construction. There is no more authority for departing to the right of the straight line of lots 81 and 83, than there is for departing to the left. It is a way 12 feet wide in the rear of, and on the extended line of, lots 81 and 83, to Congress street.

No angles or distances from points of departure are mentioned, or in any way indicated in the deed, and, looking to the deed alone, there is no other construction to be given it.

Is there any ambiguity in the deed requiring the aid of parol evidence? If so it 'may be resorted to. *French* v. *Hayes,* 43 N. H., 30. The description of the right of way conveyed, is through a "passage way" *lying* in rear of houses numbers 81 and 83, into Congress street. There is some indication in this phraseology, that the "passage way" was an *existing* passage way at the time, and the conveyance of a "perpetual right of way," was through the then *existing* "passage way."

Certain evidence has been offered tending to show the construction put upon the conveyance by the parties immediately after the execution of the deed, and at a period later by John Neal, the grantor.

The evidence shows there was an *existing* way in the rear of houses 81 and 83, extending to Congress street, when the deed was made, and that the *westerly line* of the way was a continuation, in the *same* direction, of the line of lots 81 and 83, and *parallel with State street,* to Congress street. This is not denied by defendant's counsel. The easterly side line of the way conveyed could be easily ascertained by measuring 12 feet easterly from the westerly line.

In 1857, John Neal, the grantor, in a deed made to Wm. Chase, describes "the most westerly side line of said passage way, as the fence now runs in a line *parallel with State street* thirty-eight feet, more or less, to the southerly line of Congress street." This describes the westerly line after it leaves lots 81 and 83. Again, in 1858, John Neal, in another deed to William Chase, describes this line "by a fence now thereon standing *parallel with State street.*"

The testimony of the plaintiffs, L. D. M. Sweat, C. H. Howe and John Neal, all show the fence "thereon standing" was *parallel with State street,*" and extended to Congress street. At the mouth of the passage way, on Congress street, the curb stone is champered so as to more easily admit

carriages, for a space of some 18 feet, measuring from this westerly line, and is not champered to what is now the easterly line. John Neal testifies, that he caused it to be done for the purpose of running in carriages. All these matters contemporaneous with, and long continued after the conveyance, clearly establish the purpose and intent of the parties, or at least show what they regarded as the westerly line of the passage way. If more was needed, it may be found in the deed of Neal to Frost of the premises in question, made in 1860, wherein he bounds the piece conveyed "by said passage way *now changed.*"

The westerly line up to, and at this time, was well understood and recognized by Neal, and by the Frosts, the defendant's immediate grantors.

What was now claimed, was the right to change it from its well understood position to a new one, without the consent of the plaintiff, who held under a title older than the Frosts', and originating with the same grantor.

It will be perceived that, whether the deed be construed with or without the aid of contemporaneous occurrences and facts, the result is the same in the discovery of the westerly line.

The remaining question is, could John Neal, without the consent of the plaintiff, change the westerly line of the way so as to carry the plaintiff out where he is now obliged to go?

We think he could not, for evident reasons.

The deed of Neal to Sweat, in 1849, conveyed a right of way, and operated *in presenti.* The day after its execution the rights of the grantee were the same as the plaintiff's rights to-day. Whatever was conveyed could not be reclaimed and new rights substituted. The conveyance left nothing optional with the grantor. It was absolute; it was unchangeable by him alone.

The defendant, having encroached upon the plaintiff's way

and erected permanent obstructions thereon, is guilty of a disturbance of the way and must answer in damages therefor.                *Defendant defaulted. Damages to be assessed by Judge at Nisi Prius.*

APPLETON, C. J., CUTTING, WALTON, DICKERSON and DANFORTH, JJ., concurred.