Argued November 18, affirmed December 16, 1959

## KOUKAL v. COY ET UX
### 347 P. 2d 602

*Charles S. Crookham,* Portland, argued the cause for appellants. With him on the brief was Vergeer & Samuels, Portland.

*F. Leo Smith,* Portland, argued the cause for respondent. Patrick E. Dooley, Portland, submitted the brief.

Before McAllister, Chief Justice, and Rossman, Sloan and King, Justices.

ROSSMAN, J.

This is an appeal by the defendants Frank E. Coy and Beth Coy, husband and wife, from a judgment which the circuit court entered March 7, 1956, against them in favor of the plaintiff, after it had entered an order which found them in default and had later overruled a motion of the defendants to vacate that order.

The basis of the action was an injury which the plaintiff suffered January 4, 1955, in this state while riding in an automobile owned by the defendants and which was driven on that occasion by the defendant Beth Coy. The defendants reside in the city of Moses Lake, Washington. Service upon them was obtained in the manner authorized by ORS 15.190. The defendants concede that there was no defect in the manner in which process was served upon them and in which the circuit court of this state obtained jurisdiction over the cause of action. They contend, however, that they were unaware until April 18, 1956, that the plaintiff had instituted the action and had secured the judgment. Upon that day the Washington Farm Mutual Insurance Company, which had issued the defendants' policy of automobile insurance, received a letter from plaintiff's counsel, Mr. F. Leo Smith, stating that on March 7, 1956, the plaintiff obtained a default judgment in the sum of $14,519.56 against the defendants. The letter inquired when payment would be made. August 3, 1956, each defendant availed himself of the procedure afforded by ORS 18.060 by moving the circuit court to vacate the order of default. The motions were accompanied by affi-

davits which avowed that the defendants were unaware until April 18, 1956, that the plaintiff had filed his action and had secured judgment. November 23, 1956, the defendants filed further motions which also attacked the default. The motions of November 23—one for each defendant—claimed that the motion made by the plaintiff for the entry of defendants' default was not in writing and that, therefore, the judgment was void. All motions were overruled.

The motions to vacate the order of default which were based upon ORS 18.160 were accompanied by answers which each defendant tendered for filing. The answers were alike. The defendants condense in the following words a part of the tendered answers:

> "Admitted paragraph I, admits the relationship between husband and wife, the ownership of the vehicle, the fact that it was driven by Beth Coy, and the road conditions were adverse, that Beth Coy knew the plaintiff was a Greyhound Bus driver, and the plaintiff rode in said vehicle westerly from Umatilla, Oregon, and that while on Columbia River Highway the same skidded on the pavement and came into collision with another vehicle, and admits that plaintiff may have suffered some injury."

Those parts of the answer were followed by two affirmative defenses, the first of which averred that if the evidence should show that defendant Beth Coy was negligent in the operation of her automobile it would also show that the plaintiff was guilty of contributory negligence. The second affirmative defense averred that "the plaintiff was being transported by defendant Beth Coy without payment and as a guest."

The reference in the tendered answers to the Greyhound uniform which the plaintiff wore during the unfortunate journey apparently was induced by

the following part of the complaint which, after stating that the weather and road were treacherous, added:

"* * * the defendant and her passenger observed that the plaintiff was wearing a Greyhound bus uniform and knew that he was a driver for said bus line and that he was familiar with the road conditions and also that he would be able to advise them as to how to handle their car on snow and ice and what to do on this particular road and what to do if they encountered unusual travelling conditions, and because of this, the defendant proposed that the plaintiff travel with her and her passenger on their trip * * * and the plaintiff * * * agreed to travel with the defendant and her passenger * * *."

■ The defendants present these two assignments of error:

"The Court erred in refusing to set aside the default based upon defendants' mistake, inadvertence, surprise and/or excusable neglect."

"The trial court erred in refusing to set aside the defaults entered against the defendants although plaintiff failed to file written motion for default."

We will now consider the assignments of error. ORS 18.160 provides:

"The Court may, in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, decree, order or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect."

Few sections of our laws have received more attention from the courts of this state than the one just quoted. Courts are reluctant to deny a party opportunity to present a defense, if he has one, to an action which has been brought against him. Accordingly, if the

barrier to his presentation of a defense is an order of default which was entered "through his mistake, inadvertence, surprise or excusable neglect," and the court is satisfied that justice demands the vacation of the order ORS 18.160 empowers it to exercise sound discretion and vacate the default.

The language of ORS 18.160, including the word "discretion," is broad in its implications and it must be kept so, for often nothing less than sagacity is required to determine whether a defendant who seeks to be relieved of a default comes in good faith with a bona fide defense, or whether he had actual knowledge of the institution of the case against him and is an impostor. It is a serious matter to deprive a defendant of opportunity to present a defense, but it is equally serious to strip a plaintiff of a just judgment upon the motion of a pretender. As time has gone on and the courts have been enlightened through their administration of statutes such as ORS 18.160, they have come to take special note of incidents which they must look for when a defaulted defendant seeks an order relieving him from his default. Whether he acted promptly or took a dilatory course after becoming apprised of the order of the default judgment is often significant.

When any one is injured he lets out immediately an outcry of pain; when an innocent person is erroneously accused of a wrong he promptly protests; when a person is defamed his wounded pride gives him no rest until atonement has been made; in fact, when any one is made the victim of a serious injustice he does not wait silently for a while before seeking amends. Wrong gives its victim a strong compulsion to speak up and seek redress. If the victim of the injustice sees that a court has been victimized into

lending its aid to the wrong-doer his urgency to set the matter aright is doubled. Accordingly, if any one claims that a wrong was done to him upon a prior occasion, and, yet it develops that he remained silent day after day and month after month until he entered the court room and sought damages or other relief he may find that there lurks in the word "discretion," found in ORS 18.160, doubts and suspicions of his story which he will have to remove before relief is awarded to him.

In *Steeves v. Steeves,* 139 Or 261, 9 P2d 815, this court said:

"* * * The party seeking to vacate and set aside a decree must act with reasonable diligence and show good cause. Courts are usually liberal in opening up a default or setting aside a decree or judgment during the term in which it was entered. However, a different rule obtains after the term is closed. The action of the court in refusing to set aside a decree or judgment will not be reviewed except for an abuse of discretion * * *."

The defendants-appellants cite five decisions of this court as authority for a contention that ORS 18.160 "is a remedial statute and is to be given a remedial and liberal interpretation to the end that every litigant shall have his day in court." But in each of the five cases which they cite the motion to vacate the order of default was made within the term of court in which plaintiff won the judgment.

In the case at bar the defendants' insurance company concedes that it received on April 18, 1956, a letter from plaintiff's attorney which stated that a judgment against these defendants (the Coys) had been obtained by the plaintiff (Koukal). We explain that before the plaintiff had instituted his action his attorney and the claims supervisor, Mr. Dullanty, of

the insurance company had exchanged several letters concerning the plaintiff's claim. The last of Mr. Dullanty's letters declined payment of the claim. It stated that the insurance company had carefully investigated the claim and had even consulted an Oregon attorney concerning its merits. From the facts just stated it will be noticed that when the insurance company on April 18, 1956, was notified that judgment had been obtained and was asked to make payment the letter concerned a matter with which it was well acquainted.

When the defendants on April 18 were informed that the plaintiff held a default judgment against them twelve days remained in the April term of the circuit court for Multnomah County. It was that court which had rendered the judgment. In those twelve days the defendants did nothing; that is, they filed no motion to vacate the order of default. Likewise, nothing was done in the May term of 31 days. The June term extends through June, July and August. ORS 4.140. The motion to vacate the order of default was not filed until August 3, 1956, almost one-third of a year after the defendants were informed that the judgment had been rendered. The delay which we have just mentioned is not the only one to which the case was subjected by the defendants' course. We shall mention another. January 8, 1957, the court entered the order which denied the defendants' motions to vacate the judgment. Then the defendants gave notice of appeal but obtained from time to time ex parte orders granting them extensions of time to prepare a bill of exceptions. Not until the plaintiff had protested to the trial judge on June 18, 1957, against further delay was the bill of exceptions prepared. The protest included mention of the fact that

on May 31, 1957, the defendants filed a voluntary petition in bankruptcy which sought discharge from plaintiff's claim. The transcript of testimony covers only 59 pages. The bill of exceptions was signed July 15, 1957. In the absence of an explanation for the delay the question naturally comes to mind as to why the defendants dallied with the matter if they believed that the order of default and the resulting judgment was due to their "mistake, inadvertence, surprise or excusable neglect." Inevitably a surmise arises as to whether the defendants lacked confidence in their position.

We have mentioned the fact that service of the complaint and summons was made in the manner authorized by ORS 15.190. The plaintiff swore that he had no address for the defendants when he filed his action except Moses Lake, Washington. As witnesses the Coys stated that they employed no street address but received their mail by way of P. O. Box 1697, Moses Lake, Washington. Shortly after the plaintiff had employed Mr. Smith as his attorney the latter wrote to the defendant Beth Coy addressing her as follows: "Mrs. Frank E. Coy, Moses Lake, Washington." The letter reached Mrs. Coy promptly and she delivered it to the insurance company. It was at that point that letters were exchanged between Mr. Dullanty and Mr. Smith. After the last letter written by Mr. Dullanty had rejected the plaintiff's claim the correspondence terminated and before long the plaintiff instituted this action.

When Mr. Smith, as plaintiff's attorney, pursued the demands of ORS 15.190 and undertook to mail the complaint and summons to each of the defendants he addressed each envelope by typing upon it the defendant's name and Moses Lake, Washington, as

the address. Each envelope bore Mr. Smith's name, address and the words "Law Office" in the upper left-hand corner. Each of the two items of mail matter was sent as registered mail with postage fully paid. The Portland postmaster's stamp which is imprinted upon the envelope shows that he received the mail item January 27, 1956, and that of the postmaster at Moses Lake shows that he received it January 28, 1956. The Moses Lake postmaster stated that the two items of registered mail were received in his post office January 28, 1956, and were returned to the sender February 15, 1956. He swore that "the usual policy for registered mail is to place a notice of arrival in the post office box. Registered mail is given directory service and the notice should have been placed in the post office box, even though the box number was not shown as part of the address. It is possible, but not probable, that the notice may have been placed in General Delivery. This office has no evidence that the notices were received in fact by either Frank E. Coy or Beth Coy, and this office has no Documentary evidence that said articles were refused acceptance by either Frank E. Coy or Beth Coy." The Moses Lake postmaster, before returning the two mail items to Portland, stamped upon each envelope the familiar imprint entitled "Returned to Writer" which was accompanied by several possible reasons for return. One of them, opposite which he placed a check-mark, was this: "Unclaimed."

The defendant Beth Coy acknowledged that she was in Moses Lake January 28, 1956, and thereabouts. Her husband, the other defendant, believed that he was also in that city at that time. Both testified that they regularly called for their mail at the post office. Mrs. Coy swore that she knew of none of their mail

which went astray between January 4, 1955, and September of 1956.

Mr. Coy, as well as his wife, testifed that neither of them found in their post office box any notice showing the arrival of registered mail. Each of them was well known in Moses Lake. Mr. Coy, who knew two of the employees of the Moses Lake post office, was in business in that city as a contractor. His wife was born in Moses Lake and has been married for 23 years. The city's population is between 8,000 and 10,000. Mr. Coy testified that he was unable to explain his failure to have received this mail.

ORS 41.360 (24) creates a disputable presumption that:

> "A letter duly directed and mailed was received in the regular course of the mail."

That presumption is one of antiquity and is based upon daily routine. Wigmore on Evidence, 3rd edition, § 9895. However, as we have seen, the two items of mail matter actually were not received by the defendants. They reached the post office to which they were addressed "in the regular course of the mail," but, according to the postmaster's notation on each envelope, they remained there unclaimed. Thus, the presumption created by ORS 41.360 (24) was vindicated, but the presumption does not go far enough to trace these items of mail into the defendants' hands. It may be that some employee neglected in the instance of each of the two defendants to place a notice in the post office box showing the arrival of an item of registered mail for him. If an employee neglected the performance of that duty he continued to neglect it day by day for the entire period of 19 days that the mail remained in the Moses Lake post office. Or it may be that each of the defendants learned of the

source of the registered mail that awaited delivery and declined to accept it. The plaintiff argues that the trial judge could properly have reasoned from the evidence that the defendants wittingly refused to receive the mail after having seen that it came from Mr. Smith who, some time prior thereto, had written to Mrs. Coy the letter which we have already mentioned. In that letter Mr. Smith stated that he had been employed as attorney for the plaintiff to effect collection of the claim.

The trial judge did not determine the issues of which we have taken notice by merely studying the affidavits. He required the individuals who had signed them, with the exception of the postmaster, to testify before him and undergo cross-examination. The testimony was followed by oral arguments. All of that was done November 16, 1956, and the matter was then taken under advisement. January 3, 1957, the trial judge required that further testimony be given and the following day decided the issues.

The question which we must answer is, did the trial judge abuse the judicial discretion entrusted to him by ORS 18.160 when he denied the defendants' motions to vacate the default. In *Lovejoy v. Willamette Locks Co.*, 24 Or 569, 34 P 660, this court was confronted with a similarly troublesome question which was also based upon the section of our laws which is now ORS 18.160. In denying the sought-for relief, the decision said:

"* * * Was the order of the court denying such petition an abuse of its discretion? The judge who denied the petition, tried the cause; he is able and experienced, and familiar with the place and its surroundings where the alleged island or land in dispute lies. While the motion was pending and under consideration, in order to better qualify him-

self to understand and apply the facts alleged in the affidavits pro and con, he visited the place where the land in dispute lies, and made a careful investigation of the facts as to its location, and after mature consideration refused to allow the relief asked. In view of these facts, the *nisi prius* judge was well qualified to pass an intelligent judgment upon the matter submitted, and it is not enough that we might reach a different conclusion to justify an interference with the exercise of his discretion. There must be not merely error of judgment, but such an exercise of it as amounts to a plain abuse of discretion. Our examination of the record has not satisfied us that the order should be disturbed, and it is therefore affirmed."

In the case now before us the record affords no explanation for the strange fact that neither of the defendants received either of the registered items of mail matter. Both items remained in the Moses Lake post office for 19 days and, unless the routine resulting from post office regulations was disregarded in this instance, two notices were placed by the postmaster in the Coy's letter box stating that registered mail awaited delivery to each of them. The defendants acknowledged that they called at the post office regularly to receive their mail. Likewise, we have no explanation for the singular dallying in courthouse pigeon holes of this case for long periods of time. We note that the plaintiff sustained his injury, which seemingly was a severe one, January 4, 1955, and now, almost five years later, the defendants ask that virtually all progress that has been made with the case should be wiped out and that the plaintiff should make a fresh start. Seemingly, upon his fresh start he would be compelled to make the trustee in bankruptcy of the defendants a party defendant.

We believe that this is a case in which we should

place reliance upon the trial judge's exercise of his discretion. The record indicates that he gave careful attention to the case. At one point he declared:

> "If we can get to the meat of the problem here by disposing with some of these technical rules, I would be glad to do it that way."

He himself asked many of the questions which elicited the testimony recounted upon previous pages of this opinion. At one point he declared:

> "Here is another thing I have to consider: the people were injured two years ago, and this is a long time to wait."

Thus, he stressed the element of delay and sought an explanation. Shortly he added:

> "* * * and then to come in at this late date with a record like this, it puts the Court on the spot."

We believe that the trial judge discerned the pivotal issue.

*Carmichael v. Carmichael,* 101 Or 172, 199 P 385, in referring to laggard efforts to gain relief from defaults, declared:

> "One of the cardinal requirements in such a proceeding is that the applicant proceed with promptness."

It is apparent from the record that the trial judge did not find that the defendants complied with that cardinal requirement. We also think that he found no explanation for the lack of promptness. We are convinced that the exercise of his discretion is worthy of affirmance. The first assignment of error lacks merit.

■ The second assignment of error charges that the motion made by the plaintiff for the entry of the

defendants' default was oral and not in writing. ORS
18.080 (1) (b), in making provision for default judg-
ments, says:

> "In other actions, the clerk, upon written motion
> of the plaintiff being filed, shall enter the default
> of the defendant, and thereafter the plaintiff may
> apply to the court for the relief demanded in the
> complaint."

If the demands of that statute were disregarded in
this case it is clear that the defendants were not
prejudiced. August 3, 1956, they tendered for filing
their answer which averred contributory negligence
and a charge that the plaintiff was a non-paying
guest. Three months and 20 days later they pre-
sented the contention that the motion to enter the
default was oral and not written. We think that it
is safe to infer that the contention was not based
upon prejudice but upon belated discovery.

In the case at bar the plaintiff did not seek from
the clerk an entry of the defendants' default. Plain-
tiff's counsel, before asking for an order of default,
had filed on January 27, 1956, his affidavit which
showed in detail service of process in the manner
authorized by ORS 15.190. On the day in which he
applied for the order of default, March 1, 1956, he
filed an affidavit signed by himself showing that on
January 27, 1956, service in conformity with the de-
mands of ORS 15.190 had been made. It necessarily
followed from the facts recited in that affidavit that
the defendants were in default. Both affidavits con-
stitute a part of the judgment roll. At the time the
plaintiff's counsel appeared before the judge who sub-
sequently tried the issues mentioned in preceding
paragraphs he "moved the Court for an Order to find
the defendants in default." That fact is recited in

the order of default which was then signed. The order of default sets forth all of the facts which were averred in counsel's affidavit and, after finding that neither defendant had made an appearance, declares that each is "hereby found to be in default." The order of default was signed by the judge. Still later the judge signed the challenged judgment. We know of nothing in the procedure thus employed which ran counter to ORS 18.080 (1)(b).

The foregoing disposes of both assignments of error adverse to the defendants.

The challenged judgment is affirmed.