Edward M. DAVIS, Helena L. Davis
and Mona H. Powell

v.

Mary BRUK.

Supreme Judicial Court of Maine.

Feb. 19, 1980.

Fitzgerald, Donovan, Conley & Day by James F. Day (orally), Bath, for plaintiffs.

Bernstein, Shur, Sawyer & Nelson by Peter J. Rubin (orally), Portland, for defendant.

Before McKUSICK, C. J., GODFREY and NICHOLS, JJ., and DUFRESNE, ARCHIBALD, and DELAHANTY, Active Retired Justices.

DUFRESNE, Active Retired Justice.[1]

The parties to this litigation own adjacent parcels of real estate located at Harmon's Harbor in the Town of Georgetown. Edward Davis, Helena Davis and Eva C. Campbell, the plaintiffs, as owners of the dominant estate, commenced injunctive proceedings in the Superior Court (Sagadahoc County) against Mary Bruk, the owner of the servient estate, seeking to prevent Bruk from obstructing in various ways their right of way across Bruk's land to the Town Road and to the seashore. In their original complaint, the plaintiffs also sought damages for alleged interference with their right of access to a natural spring on the Bruk property. By amendment properly allowed, the plaintiffs prayed that the Court permit them to pave a portion of the right of way to remedy and avoid the washing away of gravel due to water flowing across the right of way. Mona H. Powell was later substituted, pursuant to Rule 25(c), M.R.Civ.P., as a party plaintiff for Eva C. Campbell who had transferred her interests in the land to her daughter, Mona.

The defendant Bruk initially counterclaimed for damages against the plaintiffs for unlawfully widening the right of way to the Town Road beyond its legal width and for incidental damages. By amendment to her counterclaim, she sought affirmative relief from the changes made to the right of way, injunctive relief against further use of her land, and asked the Court to enjoin the plaintiffs from using the existing right of way in exchange for the use of a proposed relocated right of way. Her stated reason for requesting the Court to approve the proposed relocation of the right of way was that

"[s]aid road passes by the home of the Defendant Mary Bruk in such a way as to create a dangerous and hazardous condition in that it passes so close to the home of the said Defendant Mary Bruk that it creates the potential for either damage to the property of the said Mary Bruk or to

---

1. Sitting by assignment.

her person or to others who are guests of the said Mary Bruk."

By decision dated January 21, 1977, received in the Clerk's Office on January 24, 1977, the Superior Court ordered the Clerk to enter a judgment which clarified the scope of the plaintiffs' easement and denied Bruk's counterclaim insofar as it sought the relocation of the plaintiffs' right of way, but ordered the defendant to permit the plaintiffs to use another spring on Bruk's property or, in the alternative, to pay the plaintiffs the sum of three hundred dollars as damages to the plaintiffs for reopening the spring that the defendant had closed up. The Court's judgment was fully entered on the docket on the day of its receipt, January 24, 1977. The judgment, additionally, contained a proviso which stated that Bruk was not precluded from filing a new proposal "concerning the feasibility of any other proposed alternative right of way which would alleviate the dangerous situation" created by the present location of the right of way and which would be "not more burdensome to the dominant estate."

On February 3, 1977 the defendant Bruk timely filed a motion to amend the January 1977 judgment pursuant to Rule 52(b), M.R. Civ.P. in relation to the Campbell right of way to the shore and at the same time sought alteration of the judgment in respect to the plaintiffs' right of way to the Town Road, asking the Court to consider her second proposal for relocation of the right of way, which alternative proposal Bruk contended she had advanced at the previous hearing as her second choice. After a hearing on Bruk's motion to amend held on July 14, 1977, the trial Court made new findings of fact and revised the January judgment only to the extent that it approved Bruk's second proposal for relocation of the plaintiffs' right of way to the Town Road; these findings stated, among other things, that the approved relocated route would not create an unreasonable burden upon the plaintiffs, and that it would alleviate Bruk's problems with dust and traffic hazards posed by the use of the existing right of way. Bruk had agreed to assume the costs of constructing the new right of way.

The plaintiffs, who have consistently maintained that the court has no authority to order the relocation of an expressly granted easement without the consent of the owners of the dominant estate, have now appealed from the judgment as it finally stands, seeking, inter alia, the vacation of that part of the judgment which permits the defendant Bruk to construct a new right of way, seeking also appellate review of the Court's ruling respecting the use of another spring on the Bruk property, refusing to allow damages for interference with their right of way and denying them permission to pave the right of way to the Town Road.

The defendant Bruk has filed a cross-appeal which raises an issue concerning the location of the Campbell-Powell shore easement.

The plaintiffs' appeal is sustained in part and denied in part. The defendant's appeal is denied.

1. *Timeliness of the plaintiffs' appeal*

Before addressing the merits of the issues presented for our consideration on appeal, we must first dispose of the defendant's contention that the plaintiffs' notice of appeal was not timely filed.

█ Initially, we must bear in mind that it is the *entry* of the judgment appealed from, and not the underlying decision of the court, even though filed with the clerk, that triggers the appeal period provided by Rule 73(a), M.R.Civ.P. And, pursuant to Rule 58, M.R.Civ.P., "[t]he notation of a judgment in the civil docket . . . constitutes the entry of the judgment; *and the judgment is not effective before such entry.*" (Emphasis supplied) See Field, McKusick & Wroth, Maine Civil Practice, § 58.1, vol. 2, at p. 49; *Maine Savings Bank v. DeCosta,* Me., 403 A.2d 1195 (1979); *Sothen v. Continental Assurance Co.,* 147 W.Va. 458, 128 S.E.2d 458 (1962); *Kanatser v. Chrysler Corp.,* 10th Cir., 199 F.2d 610 (1952), cert. denied, 344 U.S. 921, 73 S.Ct. 388, 97 L.Ed. 710 (1953); *Gore v. Jarrett,* 192 Md. 513, 64 A.2d 550 (1949).

■ Although the 30-day period for filing notice of appeal from this judgment started to run on January 24, 1977, the date of its notation by the clerk in the civil docket, according to Rules 73(a) and 58, M.R.Civ.P., the running of the period for appeal terminated, when the defendant filed in proper time her motion to amend the judgment pursuant to Rule 52(b), M.R. Civ.P.[2] The defendant's motion was granted by the trial Court on September 12, 1977 and resulted in the entry by the Clerk of a new judgment on September 15, 1977. This last entry of judgment as amended had the effect of reactivating the running of the "full time for appeal" as provided by Rule 73(a), M.R.Civ.P.[3]

■ Following the entry of the amended judgment on September 15, 1977, the plaintiffs, on September 26, 1977, filed a motion to amend the findings of fact and for a new trial pursuant to Rules 52(b) and 59(a) respectively, M.R.Civ.P.; both motions were timely, even though filed eleven days after the entry of the amended judgment, since the tenth day after the entry of judgment fell on a Sunday. Rule 6(a), M.R.

Civ.P.[4] Furthermore, Rule 52(b) permits the motion for amendment of findings and judgment to be made within 10 days after notice of the previous findings made by the court. Rule 59(b) requires the motion for a new trial to be served not later than 10 days after entry of the judgment. No issue is made as to proper service.[5] Thus, the period for filing notice of appeal again was terminated until, as provided in Rule 73(a), the court's action on the motions resulted in the entry of an order granting or denying the relief sought therein. The "full time for appeal" (30 days) started anew on April 10, 1978, when, on that date, the Clerk received an order dated March 1, 1978, which was entered in the civil docket on the same day and which purported to amend certain previous findings of fact and conclusions of law and denied the plaintiffs' motion for a new trial. The entry-of-judgment rule which determines the commencement of the appeal period applies with equal force to "orders" of the court. We said in *State v. Baker*, Me., 390 A.2d 1086, at 1089 (1978):

"The efficiency of the appellate process is enhanced if the various time periods

---

2. Rule 73(a), M.R.Civ.P. provides in part:

"The running of the time for appeal is terminated by a timely motion made pursuant to any of the rules hereinafter enumerated, and the full time for appeal fixed in this subdivision (thirty days) commences to run and is to be computed from the *entry* of any of the following orders made upon a timely motion under such rules: granting or denying a motion for judgment under Rule 50(b); or making findings of fact or conclusions of law as requested under Rule 52(a); *or granting or denying a motion under Rule 52(b) to amend* or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; or granting or denying a motion under Rule 59 to alter or amend the judgment; or denying a motion for a new trial under Rule 59." (Emphasis added)

3. In the intervening period between February 3, 1977 and September 12, 1977, in fact on July 13, the plaintiffs filed a motion for relief from judgment pursuant to Rule 60(b), M.R.Civ.P. The defendant contends that the issues raised in this motion should have been proffered in a motion pursuant to either Rule 52 or Rule 59, M.R.Civ.P. We see no need to address this point, since our analysis of the procedural history of the instant case leads us to conclude that other properly and timely made motions

kept the period for appeal alive well beyond June 8, 1978, when the plaintiffs filed their notice of appeal.

4. Rule 6(a), M.R.Civ.P. reads in pertinent part:

"In computing any period of time prescribed or allowed by these rules, by order of court, or by any applicable statute, the day of the act, event, or default after which the designated period of time begins to run is not to be included. The last day of the period so computed is to be included, unless it is a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday, or a holiday."

5. Rule 5(d), M.R.Civ.P. provides as follows:

"All papers after the complaint required to be served upon a party shall be filed with the court either before service or within a reasonable time thereafter. Such filing by a party's attorney shall constitute a representation by him, subject to the obligations of Rule 11, that a copy of the paper has been or will be served upon each of the other parties as required by subdivision (a) of this rule. No further proof of service is required unless an adverse party raises a question of notice."

provided by statutes and rules begin unambiguously on the dates when *judgments and orders are entered as such.*" (Emphasis provided)

See also *Torrey v. Full Gospel Church of Searsport*, Me., 394 A.2d 276, 279 (1978); Rule 79(a), M.R.Civ.P.

Following the entry of the ensuing amended judgment and of the order denying the motion for a new trial on April 10, 1978, the plaintiffs, on April 20, 1978, filed yet another motion for a new trial based on newly discovered evidence under Rule 59(a), M.R.Civ.P. Once again, this timely motion terminated the running of the thirty day period for filing the notice of appeal.

Finally, this last motion for a new trial was denied by the presiding Justice in a decision dated May 31, 1978, but filed with, and received by, the Clerk on June 2, 1978, at which time the Clerk made the entry of the order in the civil docket. The entry of this order on June 2, 1978 started the 30-day period of appeal anew and the plaintiffs' appeal on June 8, 1978 was well within the requirements of Rule 73(a), M.R. Civ.P. As stated in 73(a), M.R.Civ.P., an appeal shall not be dismissed, because it is designated as being taken from an order, but shall be treated as an appeal from the judgment. The plaintiffs were not compelled to appeal before final judgment in order to save their right of review of all rulings to which they objected and which led up to the final judgment.

■ Since the record manifests full compliance with the time requirements of the rules, this Court has jurisdiction to entertain the plaintiffs' appeal.

### 2. *Power of Trial Court to Relocate Plaintiffs' Right of Way*

■ The plaintiffs claim that the trial Court committed reversible error, when it adjudged that the defendant had the right to relocate the plaintiffs' right of way to the Town Road under the existing circumstances without the consent of the plaintiffs. We agree with the plaintiffs' contention.

■ In the great majority of jurisdictions the rule is, that, once the location of an expressly deeded easement is established, whether by the language of the instrument creating the easement or by subsequent acts of the parties fixing on the ground the location of a general grant of a right of way, the site location may not be changed thereafter by either the owner of the dominant estate or the owner of the servient estate, unless both parties consent to the relocation, excepting, however, where the document creating the easement also contains an express or implied grant or reservation of power to relocate. Thus, in the absence of statutory provisions to the contrary, as a general rule, the location of an easement, when once established, cannot be changed or the easement relocated without the mutual consent of the owners of the dominant and servient estates. *Sedillo Title Guaranty, Inc. v. Wagner*, 80 N.M. 429, 457 P.2d 361, 363 (1969); *Moore v. Center*, 124 Vt. 277, 204 A.2d 164, 166 (1964); *Sibbel v. Fitch*, 182 Md. 323, 329, 34 A.2d 773, 774 (1943); Thompson, *Real Property*, Sec. 440 (1961); 3 Tiffany, *Real Property*, Sec. 806 (1939).[6]

In *Sakansky v. Wein*, 86 N.H. 337, 169 A. 1, 3 (1933), the New Hampshire Court had this to say in relation to the relocation of a fixed existing right of way:

"The use which the plaintiff [owner of the dominant estate] may make of the way is limited by the bounds of reason, but within those bounds it has the unlimited right to travel over the land set

---

**6.** Accord: *Swenson v. Strout Realty, Inc.*, 85 Nev. 236, 452 P.2d 972, 974 (1969); *Coast Storage Company v. Schwartz*, 55 Wash.2d 848, 351 P.2d 520 (1960); *Jones v. Edwards*, 219 Or. 427, 347 P.2d 846, 850 (1959); *Hamilton v. Transcont. Gas Pipe Line Corp.*, 236 Miss. 429, 110 So.2d 612 (1959); *Youngstown Steel Products Co. v. City of Los Angeles*, 38 Cal.2d 407, 240 P.2d 977, 979 (1952); *Stamatis v. Johnson*, 71 Ariz. 134, 224 P.2d 201 (1950), as modified, 72 Ariz. 158, 231 P.2d 956 (1951); *Tripp v. Bagley*, 74 Utah 57, 276 P. 912 (1929); *Naumkeag Steam Cotton Co. v. American Glue Co.*, 244 Mass. 506, 139 N.E. 296 (1923); *Manning v. Port Reading R. Co.*, 54 N.J.Eq. 46, 33 A. 802 (1896).

apart for a way. It has no right to insist upon the use of any other land of the defendants [owners of the servient estate] for a way, regardless of how necessary such other land may be to it, and regardless of how little damage or inconvenience such use of the defendants' land might occasion to them. *No more may the defendants* [owners of the servient estate] *compel the plaintiff to detour over other land of theirs."* (Emphasis provided)

In *Smith v. Jackson*, 180 N.C. 115, 104 S.E. 169 (1920), the North Carolina Court ruled that the owner of the servient estate could not deprive the owner of the dominant estate of the use of the easement by providing another right of way, no matter how detrimental the easement was to the servient owner in the use of his land. See also *Edgell v. Divver*, Del.Ch., 402 A.2d 395, 397–398 (1979).

This is not a case, where the language of the express grant or reservation of easement expressly or impliedly authorizes a relocation of the easement, as in *Lyon v. Lea*, 84 Me. 254, 24 A. 844 (1892); *State, Commissioner of Transportation v. Stulman*, 136 N.J.Super. 148, 345 A.2d 329 (1975). The deeds in the plaintiffs' chain of title contain express language in unqualified terminology concerning a right of way to the Town Road. The trial Court found that, although the deeds themselves did not fix the exact location of the right of way, the present location of the easement was fixed in 1896 and has never varied since that time. The defendant Bruk was well aware of the right of way when she purchased the servient estate in 1963.

We recognize that a few courts have carved out an exception to the general rule foreclosing relocation of easements by the owner of the servient estate without the consent of the owner of the dominant estate. See *Brown v. Bradbury*, 110 Colo. 537, 135 P.2d 1013 (1943); *Cozby v. Arm-strong*, 205 S.W.2d 403 (Tex.Civ.App.1947); *Stewart v. Compton*, 549 S.W.2d 832 (Ky. App.1977). But this Court, in *Gore v. Fitch*, 54 Me. 41 (1866), well expressed the rationale upon which the general rule rests, when it stated:

"The deed . . . . conveyed a right of way, and operated *in presenti.* The day after its execution the rights of the grantee were the same as the plaintiff's rights to-day. Whatever was conveyed could not be reclaimed and new rights substituted. The conveyance left nothing optional with the grantor. It was absolute; it was unchangeable by him alone." (Emphasis in original)[7]

Bruk suggests that we should dilute the holding in *Gore*, supra, and permit unilateral relocation of easements where, as in the instant case, the following conditions exist: (1) the change of location by the owner of the servient estate is slight; (2) the servient owner will bear the expense of relocation; (3) the new right of way retains the same terminal points as the old way; and (4) the new way is as convenient as, or more convenient, than, the old way is to the owner of the dominant estate.

Such an exception-rule would definitely introduce considerable uncertainty into land ownership, as well as upon the real estate market, and serve to proliferate litigation which the general rule as prevails in Maine has tended to prevent. Indeed, the owner of the dominant estate would be deprived of the present security of his property rights in the servient estate and could be subjected to harassment by the servient owner's attempts at relocation to serve his own conveniences. A unilateral relocation rule could confer an economic windfall on the servient owner, who presumably purchased the land at a price which reflected the restraints existing on the property. Such a rule would relieve him of such restraints to the detriment of the owner of the dominant estate whose settled expectations would be derailed with impunity.

**7.** *Perkins v. Perkins*, 158 Me. 345, 184 A.2d 678 (1962) does not hold, as suggested by the defendant Bruk, that a unilateral easement relocation is permissible. In *Perkins*, the trial court indicated that the case involved a right of way where the exact location had not been specifically designated upon the face of the earth.

We agree with the plaintiffs' contention that the trial Court erred in permitting the defendant Bruk to construct an alternate right of way to the Town Road. That portion of the judgment below will be set aside.

### 3. *Plaintiffs' easement respecting the use of a spring and the court's failure to allow damages for its blockage*

■ The plaintiffs challenge the trial Justice's rulings concerning their right of access to a particular spring on the defendant's property, which Bruk filled in. They contend that the defendant's action in relation to this spring constituted a tortious interference with their easement and entitled them to an award of damages. The trial Court found that, although the plaintiffs' deeds did grant them an easement to use a spring on the Bruk property, they did not specify any particular spring. The Court concluded that, unlike the easement of the right of way to the Town Road, the plaintiffs had failed to prove that the location of the right of way to a spring had ever been fixed. The record supports the trial Justice's ruling that the plaintiffs failed to carry their burden of proof on this issue. Although one spring was filled in, other springs on the defendant Bruk's property remain accessible to the plaintiffs, from which one may be selected for the exercise of their right to take water from a spring on Bruk's property. There was no error in rejecting the plaintiffs' claim for compensatory damages for interference with their right of access to a spring.

### 4. *Denial of the plaintiffs' request for permission to pave the right of way to the Town Road*

■ The plaintiffs were denied permission to pave the right of way to the Town Road on the authority of *Littlefield v. Hubbard*, 120 Me. 226, 230, 113 A. 304, 306 (1921), where this Court stated that an easement for a right of way, without more, does not permit the grantee to "disturb the soil upon the fee" of the owner of the servient estate. Accord: *Mumrow v. Riddle*, 67 Mich.App. 693, 242 N.W.2d 489

(1976); *Lorenc v. Swiderski*, 109 N.J.Eq. 147, 156 A. 465 (1931). But see *Baer v. Dallas Theater Center*, 330 S.W.2d 214 (Tex. Civ.App.1959). Even though the paving of the right of way may presumably suit the convenience of the owners of the dominant estate and provide some economic benefit, nevertheless, such material change in the surface of the right of way may give rise to an added burden on the servient estate, such as subjecting it to rapid transit of motor vehicles near the defendant's home and posing safety problems to the occupants thereof which a country way may not generate. We are not convinced that the ruling in *Littlefield* has become obsolete and should be overruled for any so-called modern doctrine. The trial Justice reached a correct conclusion on this issue.

### 5. *Defendant's Cross-Appeal: Location of the Easement to the Shore*

It is obvious from this record that the trial Court's findings of fact entered on January 21, 1977 mistakenly stated that Mona Powell's right of way to the seashore was located on the property owned by her co-plaintiffs, Edward and Helena Davis, while, in his conclusions of law entered on the same date, the trial Justice placed this same shore easement on the defendant Bruk's property. This inconsistency was brought to the Court's attention by the defendant, who filed a motion to amend the conclusions of law so that they would conform to the findings of fact and the easement be located on the Davises' property. Instead, the trial Justice responded by amending the findings of fact so as to locate the easement on the defendant's property.

■ The defendant contends that the trial Court had no authority to amend the findings of fact, since no party had made a motion requesting such an amendment. Rule 52(b), M.R.Civ.P. provides for the amendment of findings of fact "upon motion of a party". It is true that this rule does not mention any power of the court to amend findings of fact on its own initiative. Rule 60(a), M.R.Civ.P., however, permits the

correction of "clerical mistakes" on the court's own motion.[8] Where the trial justice simply makes "a slip of the tongue" and uses the name of one party where he meant to use the name of another party, Rule 60(a) empowers him to correct his own mistake on his own initiative. See *Kelley v. Bank Building and Equipment Corp. of Amer.*, 10th Cir., 453 F.2d 774, 778 (1972); *State of North Carolina v. Carr*, D.C., 264 F.Supp. 75, app. dismissed 386 F.2d 129 (4th Cir. 1967); *Reinstine v. Rosenfield*, 7th Cir., 111 F.2d 892 (1940); 6A Moore's Federal Practice, 2d Ed., § 60.06(2), at p. 4057.

Accordingly, we must reject the defendant's contention that the trial Court erred in amending the findings of fact with reference to the location of the Powell shore easement.

The entry will be:

Plaintiffs' appeal is sustained in part and denied in part.

Defendant's appeal is denied.

That portion of the judgment which permits relocation of the right of way to the Town Road is vacated.

In all other respects, the judgment of the Superior Court is affirmed.

Costs on appeal allowed to neither party.

POMEROY, J., sat at oral argument and participated in conference, but retired prior to the preparation of the opinion.

WERNICK, J., did not sit.

ARCHIBALD and DELAHANTY, JJ., sat at oral argument and participated in conference. They retired prior to the preparation of the opinion, but have joined therein as Active Retired Justices.

---

**8.** Rule 60(a) provides in pertinent part:

"Clerical mistakes in judgments, orders or *other parts of the record* and errors therein arising from oversight or omission may be corrected by the court at any time *of its own initiative* or on the motion of any party and after such notice, if any, as the court orders." (Emphasis supplied)