Argued October 3; affirmed November 14, 1944

ULRICH ET AL. *v.* LINCOLN REALTY CO. ET AL.

(153 P. (2d) 255)

Before BAILEY, Chief Justice, and BELT, ROSSMAN, KELLY, LUSK, BRAND and HAY, Associate Justices.

*Harvey S. Benson* and *MacCormac Snow,* both of Portland, for purchasers-appellants.

*Virgil A. Crum,* of Portland (Crum, Dusenbery & Martin, of Portland, on the brief), for redemptioners-respondents and cross-appellants.

BELT, J.

This is a controversy between redemptioners and the purchaser at a junior mortgage foreclosure sale. The questions presented by the purchaser are: (1) Did respondents have the right of redemption since realty and personalty were sold together for a lump sum? It is the contention of the purchaser that there can be no redemption of personal property and that absolute ownership thereof now vests in him. Purchaser also contends that, assuming that the sale of realty and personalty en masse did not preclude the right of redemption, redemptioners can not exercise such right for the reason that they have failed to file with the sheriff proof of the right to redeem, as required by the statute (§ 6-1607 O. C. L. A.). (2) What is the amount necessary to be paid for redemption of the property? The circuit court decreed that the property bought at the foreclosure sale was subject to redemption and fixed the amount to be paid by redemptioners. Both parties appeal and the causes have been consolidated for hearing in this court.

The decree of foreclosure covered Parcel 1—St. Andrews Hotel; Parcel 2—Edgewood Hall, an apartment house; and Parcel 3—Terrace Court Apartments; together with the furniture and equipment in the same. The real and personal property was heavily encumbered by prior mortgage liens and delinquent taxes. A suit for receivership was pending at the time of the mortgage foreclosure proceedings. The hotel and apartment houses in question were going concerns and were being operated at a substantial profit. The parties to the mortgage foreclosure realized that, if separate sales were had of the realty and personalty, the junior mortgage would be of slight value. The sale of a

hotel or an apartment house without furniture included would not appeal to most purchasers. Neither would a purchaser, under such circumstances, desire to buy furniture without having acquired the realty. Hence all parties litigant agreed that it would enhance the sale value to have the realty and personalty sold en masse. Such agreement is evidenced by the following recital in the decree, which was expressly approved by counsel:

"It further appearing that the mortgages sought to be foreclosed are subject to prior mortgages against each of the parcels of real and personal property above described; that in each instance the prior mortgage is far in excess of the value of the personal property and under the terms of such prior mortgages none of the personal property can be removed or separated from the building in which it is located without payment of such prior mortgage; that for this reason it is not feasible or practicable to sell the personal property separate from the building in which it is located and it therefore has no sale value separate from the building in which it is located; that for these reasons the Portland Trust & Savings Bank, as receiver, in this cause, purchased from Lincoln Realty Company, defendant, for valuable consideration the bill of sale conveying title to the personal property to the receiver, subject to prior mortgages upon the condition that the title thereto would follow the sale of the real property at sheriff's sale and any redemption made therefrom; *that all of the parties participating in the trial of this cause, and being all of the interested parties, have agreed for these reasons that the personal property in each building located on the real property above described should be sold with the real property upon which it is located subject to prior encumbrances and subject to redemption with the real property; that a sale in*

*this manner will very much enhance the sale value of the properties.* \* \* \*'' (Italics ours.)

Following the recital of the agreement, it was decreed by the court that:

" \* \* the personal property above described consisting of all the furniture, furnishings and equipment more particularly hereinbefore described, shall be sold by the Sheriff with the real property in which it is located, subject to prior encumbrances of record covering the real property and said personal property. That a redemption from the sale of either or all of the parcels of real property shall carry with it the personal property located in and upon the parcels redeemed; that execution shall issue hereon and the real and personal property above described shall be sold according to law and the rules of this Court and the terms of this decree, \* \* \*''

There was no appeal from the decree. Execution was issued directing the sheriff to sell the property in keeping with its provisions and the following notice of sale was published:

"The personal property described in connection with each parcel will be sold with the real property in which it is located and subject to redemption with said parcel of real property as provided in the decree. \* \* \*''

The sheriff's return discloses that, on October 26, 1942, he sold, subject to redemption, Parcels Nos. 1 and 3—together with furniture and equipment—to W. C. Foster for the lump sum of $23,000. Parcel No. 2 with furniture and equipment was also sold, as provided in the decree, to W. C. Foster for the lump sum of $14,000. It appears that the property was purchased by Foster for and on behalf of the appellant

Moskee Investment Co. There was no objection to the sale and it was confirmed by order of the court on November 24, 1942.

Julius Mayer, successor in interest of the mortgagor, gave notice of his intention to redeem Parcel 2, Edgewood Hall, on October 6, 1943, and, pursuant to § 6-1605 O. C. L. A., demanded an accounting of the rents, issues and profits from the purchaser who, by virtue of § 6-1610, O. C. L. A., had taken possession of the property after the foreclosure sale. Foster, the purchaser, rendered a verified account of the rents and profits derived from operation of the apartment house, together with a statement of all sums for which he claimed lien upon the property sought to be redeemed. Objections to this accounting were filed by the redemptioner. Thereupon the sheriff, pursuant to § 6-1605 O. C. L. A., transmitted all papers to the circuit court for determination. The same procedure was followed by George McFaul in reference to the redemption of the two other properties.

■ In the light of the record, we think no error was committed in allowing the redemption of the personal property although there is no statutory provision authorizing the same. Neither are we unmindful of *Roseburg National Bank v. Camp,* 89 Or. 67, 173 P. 313, wherein it was held that the statute does not contemplate the sale of realty and personalty for a lump sum and that ''personalty must be segregated and sold separately from the realty''. In that case, however, there was an appeal from the order of confirmation. Furthermore, it did not involve the all-important factor of an agreement between the parties litigant to have the realty and personalty sold en masse and subject to redemption. Here, no objection was made by the

purchaser as to the manner in which the sale was conducted, nor was there any appeal from the order of confirmation which was a conclusive determination of the regularity of the proceedings under execution: § 6-1509 (sub'd. 4) O. C. L. A.; *Skinner v. Silver*, 158 Or. 81, 75 P. (2d) 21; 21 Am. Jur. 124, Executions, § 244.

■ The sheriff was obliged to sell the property according to the terms of the decree: *Bruckman v. Healy*, 126 Or. 129, 268 P. 1001. The purchaser, in making his bid for the property, had notice of the terms and conditions under which it was sold and is bound thereby. It ill behooves him now to repudiate his bid by contending that the personal property is not subject to redemption and that it belongs to him. As stated in 33 C. J. S. 483, Executions § 228:

> "The rule is well recognized that the formalities required to be observed in the conduct of execution sales are designed for the protection and benefit of those interested in the property and its proceeds, and may be waived by their common consent. A person may, by his acquiescence in a sheriff's sale, his participation in or ratification of acts of irregularity, or by the acceptance of the benefits of such sale with knowledge that it was not properly conducted, be estopped from afterward asking to have it vacated either by motion or by a suit in equity; and parties acquiescing in the setting aside of the sale and ordering a resale are bound thereby."

When a purchaser is offered the amount of his bid, together with interest thereon, and the amount of expenditures made by him for the protection of the estate while in possession thereof, it would seem that he ought to be content. He should not be permitted to get more than he bought.

The agreement thus to sell the property—it being advantageous to all parties concerned—is not against public policy nor does it violate the law. It is not shown that the rights or interests of any person have been prejudiced by the agreement to sell the property en masse and subject to redemption.

■■ The purchaser's denial of the right of redemption amounts to a collateral attack upon the decree of foreclosure as it purported to give such right to the mortgagor or its successors in interest. Appellant purchaser's contention that the decree of the court is void is unsound as the court had jurisdiction of the subject matter and of the parties. At most it could only have been voidable. In Freeman on Judgments, § 135, quoted with approval in *Ralston v. Stone,* 113 Ore. 506, 232 P. 631, this fundamental principle is thus expressed:

> "Jurisdiction being obtained over the person and over the subject matter, no error in its exercise can make the judgment void. The authority to decide being shown, it cannot be divested by being improperly or incorrectly employed.

■ An agreement between a mortgagee and a mortgagor for extension of time for redemption of realty sold on execution has been quite generally sustained: *Bickel v. Wessinger,* 58 Or. 98, 113 P. 34; 21 Am. Jur. 184, Executions § 372; 33 C. J. S. 526, Executions § 253 (c); Note 54 A. L. R. 1211; *Western Land & Cattle Co. v. National Bank of Arizona,* 29 Ariz. 51, 239 P. 299. It would seem that an agreement between a mortgagee and a mortgagor relative to redemption of personalty sold together with realty should likewise be upheld where the interests of other parties are not prejudiced thereby. The mortgagor, under the agreement and

the terms of the decree, had the right of redemption, and it follows that its successor in interest—the redemptioner—also had such right.

No case has been cited by counsel nor have we been able to find any based upon a similar factual situation. Cases of ordinary foreclosure sales, not involving an agreement as in the instant case, are not in point.

 Relative to the question of the failure of Mayer to file proof of his right to redeem and an affidavit showing the amount due on the decree, it is provided in § 6-1607 O. C. L. A. (sub'd (1) (c)) that a party seeking to redeem must submit to the sheriff, as evidence of such right:

> "A copy of any assignment necessary to establish his claim, verified by the affidavit of himself or agent; an affidavit by himself or agent showing the amount then actually due on the judgment, decree, or mortgage."

It is observed that in the above statute no time is specified when such proof must be submitted to the sheriff. We do not agree with purchaser and failure to file such proof on or before the time designated for redemption (October 6, 1943) is fatal. Suffice it to say, the requisite proof was filed with the sheriff prior to the time redemptioner was permitted to redeem the property. Legislation of a remedial nature is entitled to a liberal construction. The order of proof may have been irregular, but the purchaser was not prejudiced thereby as it was definitely shown that respondent redemptioner was successor in interest of the mortgagor. An affidavit in compliance with the above statute was also filed by the redemptioner on November 23, 1943, showing the amount due on the decree.

We confess it is not clear just what purpose it served. Did not the purchaser know, as well as the redemptioner in this case, the amount due on the decree at that time? However, the objection of the purchaser is based merely upon the fact that the affidavit was filed after the time fixed in the notice for redemption.

■ While October 6, 1943, was designated in the notice of intention as the time when the right of redemption would be exercised, the objections of the purchaser to the accounting and the right to redeem resulted in extending the time therefor until the determination of such issues by the circuit court on November 23, 1943, at which time the final order of redemption was issued: *Alpha Corporation v. McCredie*, 157 Or. 88, 70 P. (2d) 46.

■ The last assignment of error of the appellant purchaser is that the court erred in requiring him to account for rentals received from the personal property. This assignment is predicated upon the theory that the furniture and equipment were not subject to redemption and that they belong to the purchaser. Having concluded that respondent was entitled to redeem, it follows that the purchaser, in the event of the exercise of the right of redemption, must, under the statute (§ 6-1605 O. C. L. A.), account for the rents, issues, and profits.

The next phase of the case pertains to the assignments of error of redemptioners concerning the single question as to the amount required to be paid in order to redeem the properties.

■ Redemptioners contend that the court erred in allowing the purchaser ten per cent interest upon the amount of his bid from the date of sale to the time of

redemption, rather than upon balances obtained after the application of the monthly net proceeds to the purchase price. In other words, redemptioners, in fixing the amount of interest to be paid in the accounting, invoke the method of partial payments. The following statement of account illustrates redemptioners' method of calculation:

> Purchase price (Edgewood Hall) ........$14,000.00
> 10% interest on above purchase price
> for one month from date of sale...... 116.66
> 
> $14,166.66
> Less net monthly rentals collected ........ 1,000.00
> 
> Balance due at end of month ...............$13,116.66

2nd month:

10% interest on above balance less net monthly rentals establishes a new balance at end of second month.

The purchaser asserts, and we think properly so, that he is entitled to receive the amount of the purchase price, together with interest thereon at ten per cent per annum from date of sale to the time of redemption.

15. The redemptioners' second assignment of error is based upon the allowance to the purchaser in his accounting of 10% interest on sums paid on delinquent taxes and prior liens. Redemptioners contend that, since these payments were made from funds derived from operation of the properties, purchaser is not entitled to interest thereon. Otherwise stated, redemptioners, in effect, say they should not be charged interest for the use of their own money.

The answer to the contentions of redemptioners is found in the plain and unambiguous language of

§ 6-1605 O. C. L. A. which, so far as material herein, provides as follows:

"The mortgagor * * * may at any time within one year after the date of sale, redeem the property by paying the amount of the purchase money with interest thereon at the rate of 10% per annum from the date of sale, together with the amount of any taxes the purchaser may have been required to pay, and any sums necessarily expended by him to prevent waste, and also all sums which said purchaser may have been required to pay on prior liens with interest on every sum paid by the purchaser at 10% per annum from the date of payment thereof; provided, however, that the mortgagor or judgment debtor or his heir, devisee, or grantee, shall be entitled to a setoff against the amount necessary to be paid to redeem any property subject to redemption for all rents, issues and profits accruing from the property sought to be redeemed while the same was in the possession of the purchaser, * * *"

The purchaser is obliged to account for the rents, issues, and profits derived from operation of the properties only in the event of redemption. If there is no redemption there is no accounting. The purchaser has no reason to believe that the right of redemption will ever be exercised until the statutory notice of such intention is served upon him. It is, therefore, hardly accurate to say that such net profits and rentals belong to the redemptioner prior to the exercise of the right of redemption. Redemptioners concede that, if the purchaser had used his own funds to pay delinquent taxes and prior liens, he would be entitled to 10% interest thereon from dates of payment. We are not impressed by such distinction. The statute does not take into consideration the source of the funds thus used. The right of the redemptioner is

purely statutory. The argument of redemptioners concerning the charge of interest is one more properly addressed to the legislature than to the courts.

■ In the McFaul redemption proceedings—Parcels 1 and 3, St. Andrews Hotel and Terrace Court Apartments—redemptioner asserts that the circuit court erred in denying him credit for $3,000 received by the purchaser by virtue of a contract between Lillian Ulrich, Henry W. Schafer and Russell Stephens, parties of the first part, and Moskee Investment Company, party of the second part, whereby the latter company, or its trustee (W. C. Foster), agreed to purchase the property at the foreclosure sale and was to receive $3,000 for its services in connection therewith. Ulrich, Schafer, and Stephens claim to have a sixty per cent interest in the decree of foreclosure. The contract provided that:

> "In the event of a redemption the Party of the Second Part will receive from the proceeds upon redemption the sum of $3,000.00 * * *."

We agree with the circuit court that this alleged contract is foreign to the issues in this redemption proceeding. Certainly those who were not parties to the contract would not, under any theory, be bound thereby. Redemptioner is asking, in effect, that the bid of McFaul be considered as having been $20,000 instead of $23,000, as shown by the sheriff's return. Whatever rights, if any, the Moskee Investment Co. has by virtue of the contract above mentioned, is a matter which can not be adjudicated in this proceeding, as to do so might affect the interests of other parties. The purchase price of Parcels 1 and 3 was $23,000 and, in the event of redemption, the purchaser is entitled to 10%

interest on the amount of his bid. Much has been said by counsel in their briefs as to whether this alleged contract is properly before the court for consideration, but we have deemed it best to consider the contract as a part of the record and dispose of the assignment of error on its merits.

The two orders fixing the amount required to be paid by redemptioners are affirmed. Neither party will recover costs or disbursements.