Argued May 2, affirmed June 1, 1973

# ROGUE VALLEY MEMORIAL HOSPITAL, *Respondent, v.* SALEM INSURANCE AGENCY, INC. ET AL, *Defendants,* OETINGER, *Appellant.*

510 P2d 845

604

*John P. Cooney,* Medford, argued the cause and filed the briefs for appellant.

*William V. Deatherage,* Medford, argued the cause for respondent. With him on the brief were Frohnmayer & Deatherage, Medford.

TONGUE, J.

This is an appeal from an order denying the motion of defendant Oetinger to set aside a default judgment. We affirm.

■■■ Defendant's motion was based upon ORS 18.160.① Although that statute is to be construed to the end that every defendant should have an opportunity to have his day in court, a motion to vacate a default judgment is nevertheless addressed to the sound discretion of the trial judge. That discretion must not be exercised arbitrarily, but in accordance with established legal principles. The refusal of a trial judge to grant such a motion will not be overruled, however, except for manifest abuse. *Coleman v. Meyer,* 261 Or 129, 134, 493 P2d 48 (1972).

In this case the trial judge, after considering affidavits filed by the parties and argument by counsel, denied defendant's motion, based upon findings that defendant "* * * failed to establish his excusable negligence or that he has a valid defense to the complaint * * *."

1. *The trial court did not abuse its discretion in finding that defendant failed to establish his "excusable neglect."*

The complaint in this case was filed on July 14, 1972. On July 24, 1972, defendant was personally served with a summons and a copy of the complaint. The complaint sought to foreclose a hospital lien claimed by plaintiff against a former patient as the result of hospital expenses incurred by the patient. It alleged that the patient had an insurance policy with an insurance company, incorporated in Georgia, which

---

① ORS 18.160 provides as follows:

"The court may, in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, decree, order or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect."

was also named as defendant; that defendant Oetinger was an agent for that company; that the policy covered the hospital expenses of the patient; that plaintiff had "duly filed a lien substantially in the form prescribed by ORS 87.570 with the county clerk"; that "defendants acknowledged receipt" of a copy of that lien and thereafter "made payments" to the patient, but none to the hospital, and prayed for judgment in the sum of $1144.38, plus interest, costs and attorneys fees.

It appeared from the affidavit of plaintiff's attorney that the lien was filed "on or about February 15, 1972" and was served on defendant on that date and that letters demanding payment were then addressed to defendant, dated April 7, April 11, April 17, and May 22, 1972. It also appears from that affidavit that after the summons and complaint were served upon defendant Oetinger, on July 24, 1972, and after the entry of the default judgment on August 16, plaintiff's attorney called defendant Oetinger on September 21, by telephone and notified him of the judgment; that on September 22, 1972, the defendant insurance company filed an answer, but that plaintiff's attorney heard nothing from defendant Oetinger until the filing of his motion to set aside the judgment on December 11, 1972.

That motion was supported by the affidavit of defendant Oetinger that he sold a policy of insurance providing for coverage for loss of income during hospitalization and time off work; that a claim was made under that policy and on December 28, 1971, January 20, 1972, and February 22, 1972, checks to the insured were transmitted to her by the insurance company through Oetinger; that thereafter, near the end of

February, a copy of the hospital lien was sent to Oetinger and was forwarded by him to the insurance company, and that when he was served with summons and complaint he contacted the insurance company by telephone, informed it of the service, and mailed the summons and complaint to it.

The affidavit also stated that defendant Oetinger took no steps to respond to the summons and complaint because he understood that he did all that was necessary by forwarding the documents to Coastal States; that he did not know he needed an attorney to represent him in the matter and felt that the insurance company would take care of the entire matter; and that he further understood that no judgment could be taken without a trial.

Subsequently, defendant's attorney also filed an affidavit stating that he was retained by defendant Oetinger on November 16, 1972, that after conference with Oetinger he prepared the documents supporting the Motion to Set Aside Default Judgment and that the Motion, tendered Answer, and Affidavit were filed December 11, 1972, the delay between the date when he was retained and the filing of the documents being necessitated by the need to confer by telephone and mail documents back and forth between Salem and Medford.

Defendant's attorney contends in his brief that:

"Tested by the standards of reality, Oetinger cannot be faulted for his blind, though misplaced, faith that the judge would 'do the right thing.' He knew that the plaintiff had no claim against him, personally, and it was not unreasonable for him to indulge the mistaken assumption that before acting, the judge would review the matter and 'do the right thing.' "

In *Marsters v. Ashton*, 165 Or 507, 514, 107 P2d 981 (1941), we held that neglecting to consult an attorney because of assurances by a third person that payments would be made did not constitute excusable neglect in failing to make an appearance, under the circumstances of that case. In this case, defendant Oetinger's affidavit stated that he relied upon the insurance company to do what was necessary to protect him. He did not, however, state any facts from which the court could find that the insurance company gave him any assurance that it would do so, much less that he acted reasonably or was otherwise justified in relying upon any such assurances.

Moreover, this summons included the following "Notice to Defendant," as now required by ORS 15.040 (2):

"READ THESE PAPERS CAREFULLY! You must 'appear' in this case or the other side will win automatically. To 'appear' you must file with the court a legal paper called a 'motion,' 'demurrer' or 'answer.' This paper must be given to the court within 20 days along with the required filing fee. It must be in proper form and have proof of service on the plaintiff or his attorney to show that the other side has been given a copy of it.

"If you have questions, you should see an attorney immediately."

■ It is also well established that a defendant seeking relief under ORS 18.160 from a default judgment must not only show that the judgment was entered against him through mistake, inadvertence, surprise or excusable neglect, but must also show that he acted with reasonable diligence after knowledge of the default judgment and inexcusable delay will preclude him from relief. *Koukal v. Coy et ux*, 219 Or 414, 418-

20, 347 P2d 602 (1959); *Reeder v. Reeder,* 191 Or 598, 601, 232 P2d 78 (1951); and *Steeves v. Steeves,* 139 Or 261, 265, 9 P2d 815 (1932). In this case no explanation is offered for the delay of nearly two months after a telephone call from plaintiff's attorney until defendant Oetinger consulted the attorney who then proceeded to file a motion to set it aside.

■■ As for defendant's claim of "blind, though misplaced, faith that the judge would 'do the right thing,'" we are constrained to say that in our judicial system of "justice under law," the courts must necessarily seek to accomplish justice by the application of established rules of law and are not always free to dispense abstract justice according to the lights of each litigant. We have previously stated the established rules by which the courts seek to accomplish justice in cases such as this and which are controlling in this case. After considering the entire record, and upon the application of such rules to the facts of this case, we cannot say that the trial judge abused his discretion in finding "that the defendant Oetinger has failed to establish his excusable negligence."

2. *The tender of a meritorious defense does not of itself require a trial court to set aside a default judgment which, although perhaps voidable, is not void.*

Defendant also contends that the default judgment in this case should be set aside because he has a "meritorious defense" in that plaintiff's hospital lien was not filed within 15 days, as required by ORS 87.565, but filed at least one day late and in that defendant Oetinger, as the insurance agent, was neither an insurer nor a person "obligated to compensate the injured person on account of said injury," so as to be subject to the hospital lien, even if timely filed.

In *Burke v. Rachau,* 262 Or 323, 497 P2d 1154 (1972), we held that although the claim of a meritorious defense is a necessary requirement to be established by a defendant who seeks to set aside a default judgment, proof of that requirement alone does not require that a default judgment must be set aside on motion under ORS 18.160, as in this case, in the absence of a sufficient showing of "mistake, inadvertence, surprise or excusable neglect."

In addition, however, defendant contends not only that it had a "meritorious defense," but that this default judgment is completely void so as to be subject to collateral attack. This raises the question whether a judgment based upon a statutory lien that was filed one day late or upon a complaint which fails to state a cause of suit to foreclose such a lien is void, or only voidable.

 Oregon, like most states, has held that one who would foreclose a statutory lien must bring himself clearly within the terms of the statute, and that such a statute is to be strictly construed as to persons entitled to its benefit and as to the procedure necessary to perfect the lien. However, once the right to a lien has been clearly established, a lien statute will be liberally construed to accomplish the purposes of its enactment. See, e.g., *Anderson et al v. Chambliss et ux,* 199 Or 400, 404-05, 262 P2d 298 (1953).

 Oregon has also held that, as a general rule, if the court has jurisdiction over the parties and the subject matter, the ensuing judgment, even if erroneous is not void and cannot be collaterally attacked until reversed or annulled, no matter how erroneous it may be. See, e.g., *Skinner v. Silver,* 158 Or 81, 91, 75

P2d 21 (1938), and *Ulrich v. Lincoln Realty Co.,* 175 Or 296, 304, 153 P2d 255 (1944).

■ It has also been stated, however, that although the failure of a complaint to state a cause of action is not generally regarded as a jurisdictional defect, if the court undertakes to enforce a statutory remedy unknown at common law, then the conditions prescribed by statute upon the remedy are sometimes, but not always treated as jurisdictional requirements, so that a failure to fulfill any of them may make such a judgment subject to collateral attack. James, Civil Procedure 539, § 11.6 (1965). See also 1 Restatement 273, 275 Conflicts 2d § 92(d) and Restatement 46-7, Judgments § 8, Comment *b.*

Thus, the issue presented by this case is whether the requirement of ORS 87.565 that hospital liens must be filed within 15 days after the patient's discharge is a jurisdictional requirement.

The cases in other states on this question appear to be in conflict. According to one point of view, such requirements are not jurisdictional and if the defendant in such a case allows a default judgment to be taken against him, then the plaintiff will recover according to his pleadings and proof, and the judgment will be "regular" notwithstanding any defense the defendant may have had, but failed to make. 2 Jones on Liens (3d ed 1914) 836, § 1604a. Cases which appear to support such a view include the following: *Ballew v. Denson,* 63 NM 370, 320 P2d 382 (1958); *Graham v. United States,* 243 F2d 919, 922 (9th Cir 1957); and *Contractors Construction Co. v. Grossman,* 17 Misc 2d 710, 186 NYS 2d 419 (Sup Ct Spec T 1959).

On the other hand, the following courts appear

to hold that such requirements are jurisdictional: *Brown v. First Federal Sav. & L. Ass'n. of New Smyrna,* 160 So2d 556, 561 (Fla Dist Ct App 1964); *Chance v. Franke,* 350 Mo 162, 165 SW2d 678, 680 (1942); *Fox v. Martin,* 287 Mich 147, 283 NW 9, 10 (1938); and *Hendrix v. Kelley,* 34 Del 120, 143 A 460, 461 (Super Ct 1928).

In two cases this court has indicated that statutory lien requirements may be jurisdictional. In *Burns v. La Fountaine,* 112 Or 194, 229 P 369 (1924), the court stated (at 196) that the complaint did not allege, among other things, that the notice was filed within 60 days after delivery, and that "* * * [t]hese are jurisdictional facts, for want of which the complaint does not state facts sufficient to constitute a cause of action. * * *" The authority cited for this statement was *McCann v. Oregon Scenic Trips Co.,* 105 Or 213, 209 P 483 (1922). However, in *McCann,* the court stated (at 217) that the trial court had jurisdiction of the subject matter, despite its further holding (at 219) that failure of plaintiff to allege giving of notice of lien rendered the complaint insufficient to constitute a cause of suit. Thus, the court did not hold in *McCann* that giving of notice was a "jurisdictional fact."

The second such case is *Williams v. International Co.,* 172 Or 270, 141 P2d 837 (1943). In that case, to support plaintiff's contention that defendant had caused her damage, proof was offered to the effect that plaintiff's automobile, due to defendant's breach of duty, was sold at a lien foreclosure sale. The court (at 289) rejected that contention, holding that since the required notice was not given and as the period covered by the lien exceeded the statutory limitation of time for such liens, the sale "* * * was void and

ineffectual to pass title * * *." The authority cited for that proposition was *Tulloch v. Cockrum,* 115 Or 601, 236 P 1045 (1925). *Tulloch* was a replevin action in which the defendant claimed title by virtue of purchase at lien foreclosure sale. Since the statutory notice of lien had not been complied with the court held (at 608) that the foreclosure proceedings were invalid and that therefore defendant did not acquire title to the automobile in question.

More recently, however, in *Hood River County v. Dabney*, 246 Or 14, 423 P2d 954 (1967), this court overruled a long series of cases to the effect that the failure to strictly comply with statutory notice requirements in tax lien proceedings resulted in a jurisdictional defect which would render such a proceeding void. In so holding we noted (at 22) that those prior decisions would have been warranted only if the legislature *intended* such provisions to be jurisdictional requirements. Finding from a number of statutes a legislative intent to strictly limit taxpayer's rights to attack defective tax lien foreclosure proceedings, we held (at 22) that all defects in such proceedings are non-jurisdictional unless they deprive the taxpayer of his constitutional right to due process notice. It follows that in considering other lien statutes, including the hospital lien statutes, it is necessary to consider the question of legislative intent in deciding whether various requirements in such statutes are jurisdictional.

■ In enacting such statutes the legislature presumably must consider two opposing interests: (1) the interest of the debtor, including his interest in receiving fair and adequate notice of the lien and of its foreclosure and (2) the interest of the lien holder and

of purchasers at foreclosure sales. Cf. *Hood River County v. Dabney, supra* at 22. In reviewing the hospital lien statutes (ORS 87.555 to 87.585) we find no "clear" pronouncement of legislative intent on the question whether the time limitations provided by those statutes were intended to be jurisdictional or non-jurisdictional, as in the tax lien statutes involved in *Dabney.*

We believe, however, that in the absence of a clear indication that the legislature intends that provisions prescribing time limits for the filing of such a lien are to be considered as "jurisdictional" requirements, so as to render a lien void for failure to comply with such a time limitation (including any judgment based upon such a lien), the more reasonable inference is that it was the intent of the legislature that although the failure to comply with such requirement would render such a lien fatally defective in the sense that it would be voidable, such a lien (including a judgment based upon such a lien) would not be completely void.

Therefore, because we find no "clear" pronouncement of legislative intent on this question in enacting the hospital lien statutes, we hold that the time limitations included in these statutes were not intended to be jurisdictional in that sense, so as to permit a collateral attack on such a judgment.

We would also observe that the present trend appears to be to hold that similar requirements are not jurisdictional and that a judgment rendered in violation of requirements of this sort is not void and is not open to collateral attack. Restatement 50, Judgment § 8, Comment *d.* To the extent that *Burns v. La Fountaine, supra,* and *Williams v. International Co., supra,* are inconsistent with this decision they are overruled.

■ We also wish to make it clear that we do not regard the filing of a lien a day or so after the expiration of the statutory time limitation provided by ORS 87.565 as a defect which raises constitutional questions of due process notice, such as those which might have been, but were not, properly raised in *Scoggins v. State Construction,* 259 Or 371, 485 P2d 391 (1971).

Because we reach these conclusions it becomes unnecessary to decide whether a motion under ORS 18.160 to set aside a default judgment is a direct or collateral attack upon such a judgment or whether in such a proceeding a trial judge must set aside the default judgment if it is void, rather than voidable, regardless of the existence or non-existence of "excusable neglect."

For all of these reasons, we hold that there was no arbitrary abuse of discretion by the trial judge in denying the motion of defendant Oetinger to set aside the default judgment in this case.

Affirmed.