Argued April 1, affirmed April 25, petition for rehearing
denied by opinion May 23, 1974

## ST. ARNOLD, *Respondent, v.* STAR EXPANSION
## INDUSTRIES, *Appellant.*

521 P2d 526
522 P2d 477

*William G. Wheatley,* Eugene, argued the cause for appellant. With him on the brief were Jaqua & Wheatley and Richard A. Roseta, Eugene.

*Joel B. Reeder,* Medford, argued the cause and filed the brief for respondent.

TONGUE, J.

This is an appeal from an order denying defendant's motion to set aside a default judgment and also from a previous order denying defendant's motion to quash the summons and its service and to set aside the

same judgment. We shall first discuss that motion and order.

1. *The summons and its service was sufficient to confer jurisdiction on the court.*

■ Defendant's motion to quash first contends that defendant was "improperly named," in that its proper name is Star Expansion Industries Corporation, not Star Expansion Industries, as named in the summons and complaint. Defendant says that plaintiff has named the "wrong corporation."

There was no showing, however, that there was another corporation named Star Expansion Industries. Service of a summons and complaint in that name was made personally upon the secretary of Star Expansion Industries Corporation. Thus, it appears that this is a case of service on the right corporation by a wrong name, rather than one of service upon the wrong corporation.

In *Foshier v. Narver*, 24 Or 441, 34 P 21 (1893), it was held by this court (at 445):

"* * * Process served on a man by a wrong name is as really served on him as if it had been served upon him by his right name. In such case it seems to us that the court acquires jurisdiction over his person, and, unless he appears and puts in his defense, the court is authorized to proceed to judgment. Assuming, then, that the notice served upon the defendant ran to the name of P. J. Narver, it does not follow, as a legal or logical consequence, that a service of such notice on J. Narver was service on the wrong party. On the contrary, after the defendant was so served, if he failed to appear and show that the plaintiff was not entitled to relief against him, because he was the wrong party, and not liable, when he had an opportunity to be heard on that question, the judgment established the fact

that he was the right party and the plaintiff's right to relief against him."

See also *Walters et al v. Dock Commission,* 126 Or 487, 511, 266 P 634, 270 P 778 (1928).[1]

■ Defendant's motion also contends that "plaintiff failed to comply with ORS 15.040 (2) in that the 'Notice to Defendant' required by that statute did not contain the proper time within which the Defendant was obliged to appear * * *."[2] The "notice" at the

---

[1] Defendant cites White v. Johnson, 27 Or 282, 40 P 511 (1895), in support of its position to the contrary. That was not, however, a case of service upon the right person by a wrong name. In that case the summons and complaint named A. H. Johnson as defendant and it was served upon him personally. A. H. Johnson died prior to making any appearance. Plaintiff then took an order substituting Cornelia Johnson, the executrix of his estate, as defendant, and a copy of that order was served upon her. The original summons and complaint, naming A. H. Johnson as defendant, were then served upon her and that service was held (at 294) to be defective upon the ground that the name of Cornelia Johnson (the person sought to be proceeded against as the defendant), was not contained in the title of the summons or complaint. Subsequent decisions recognize this to be the basis for the decision in *White.* See First Nat. Bank of Joseph v. Rusk, 64 Or 35, 44, 127 P 780, 129 P 121 (1913); Stadelman v. Miner, 83 Or 348, 397, 155 P 708, 163 P 585, 163 P 983 (1917). See also State ex rel Kalich v. Bryson, 253 Or 418, 424, 453 P2d 659 (1969).

[2] ORS 15.040 (2), adopted in 1971 (Oregon Laws 1971, ch 192, § 1) provides:

"The summons shall contain a notice in a size equal to at least 8-point type which may be substantially in the following form with the appropriate number of days inserted:

'NOTICE TO DEFENDANT:

'READ THESE PAPERS CAREFULLY!

'You must "appear" in this case or the other side will win automatically. To "appear" you must file with the court a legal paper called a "motion," "demurrer" or "answer." This paper must be given to the court within —— days along with the required filing fee. It must be in proper form and have proof of service on the plaintiff or his attorney to show that the other side has been given a copy of it.

'If you have questions, you should see an attorney immediately.' "

bottom of the summons served upon this defendant stated that "this paper must be give[n] to the court within *ten* days * * *." (Emphasis added) The provisions in the body of the summons stated, however, as provided by ORS 15.110 (3), that defendant was required to appear "if served within any other state within the United States, then within *four weeks* from the date of the service of this summons * * *." (Emphasis added)

It is contended that ORS 15.040, including its provisions for "Notice," relates solely to service of summons within the state, including service within the state upon the Corporation Commission "as provided by law in certain cases" and that when personal service is made outside the state under ORS 15.110 the provisions of that statute are controlling and the addition of the "Notice to Defendant" provided for in ORS 15.040 is not required. See dissenting opinion, *State ex rel Kalich v. Bryson,* 253 Or 418, 424, 453 P2d 659 (1969).

In any event, defendant suffered no prejudice under the facts of this case. Service was made upon defendant on November 30, 1972, and judgment was not entered until January 18, 1973, far more than four weeks later. No appearance was made by defendant until April 24, 1973. At the most, defendant should have assumed that it was required to appear either within 10 days or within four weeks. Because defendant did neither it cannot claim that it was misled in any way to its prejudice.[9]

---

[9] It does not follow, of course, that if a default judgment had been entered in this case after the expiration of the 10-day period, but prior to the expiration of the four-week period, such a default judgment would not be set aside. See State ex rel Kalich v. Bryson, 253 Or 418, 422, 453 P2d 659 (1969).

Under these facts we hold that this defect in the provisions of the summons served upon defendant with respect to the time within which defendant was required to appear was not of such a nature as to deprive the court of jurisdiction. It follows that the trial court properly denied defendant's motion to quash. Cf. *State ex rel Kalich v. Bryson,* 253 Or 418, 422, 453 P2d 659 (1969).

2. *The trial court did not abuse its discretion in denying defendant's motion to set aside the default judgment as one taken against it through its "mistake, inadvertence, surprise or excusable neglect."*

■ Defendant recognizes that ORS 18.160 expressly provides that motions to set aside default judgments for "mistake, inadvertence, surprise or excusable neglect" are addressed to the discretion of the trial court and that its exercise of that discretion will not be reversed by this court unless there has been an abuse of discretion by the trial court.[4]

In support of its contention that the trial court abused its discretion in this case defendant has cited *King v. Mitchell,* 188 Or 434, 440, 214 P2d 993, 216 P2d 269 (1949), in which we held (at 441) that the discretion of which the statute speaks is "a legal discretion to be exercised in conformity with the spirit of the law and in a manner to subserve and not to defeat the ends of justice." We also said in *King* (at 442) that this statute is to be "construed liberally to the end that every litigant shall have his day in court and his rights and

[4] ORS 18.160 provides:

"The court may, *in its discretion,* and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, decree, order or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect." (Emphasis added)

dūties determined only after trial upon the merits of the controversy."

■ On the other hand, as defendant also recognizes, it is well established that a defendant seeking relief under ORS 18.160 from a default judgment must not only show that the judgment was entered against him through "mistake, inadvertence, surprise or excusable neglect," but the defendant must also show that he acted with reasonable diligence after knowledge of the default judgment and inexcusable delay will preclude him from relief. *Koukal v. Coy et ux,* 219 Or 414, 418-20, 347 P2d 602 (1959) ; *Reeder v. Reeder,* 191 Or 598, 601, 232 P2d 78 (1951) ; *Steeves v. Steeves,* 139 Or 261, 265, 9 P2d 815 (1932) ; and *Rogue Val. Mem. Hosp. v. Salem Ins.,* 265 Or 603, 609, 510 P2d 845 (1973).

Defendant contends, however, quoting from *King v. Mitchell, supra* at 444, that although the precedents are useful as guidelines for decision in such cases, each case must be determined on its own peculiar facts.

We therefore turn to a consideration of the facts of this case.

*Summary of the facts.*

In April 1971 plaintiff was seriously injured while installing an overhead door manufactured by defendant. On December 22, 1971, plaintiff's attorney sent a letter to defendant asking that it have a representative of its insurance carrier contact him. In January 1972 he was contacted by Mr. Kenneth Barrett, an independent insurance adjuster.

On September 25, 1972, after several months of negotiation, Mr. Barrett notified plaintiff's attorney that the insurance company was denying his client's

claim. According to the affidavit of plaintiff's attorney, Mr. Barrett "expressed to me that he was having trouble receiving anything one way or the other from the insurance company concerning the claim." This is corroborated by the affidavit of Mr. Barrett; including a statement to the effect that as late as September 6, 1972, the insurance company office in Los Angeles was "having difficulty with filing," with the result that the district claims supervisor, Mr. Trimmer, had not "reviewed the file."

On November 1, 1972, plaintiff's complaint was filed and summons was issued. On that same date plaintiff's attorney sent a "courtesy copy" to Mr. Barrett, who mailed it to Mr. Trimmer in Los Angeles on November 2, 1972. Upon receiving no further instructions, Mr. Barrett then closed his file and on November 20, 1972, forwarded to the insurance company his bill for services.

Meanwhile, the summons and complaint were served personally on Mr. Koslan, defendant's secretary, in Mountainville, New York, on November 30, 1972. On December 4, 1972, Mr. Koslan mailed the summons and complaint to the office of the insurance company in Poughkeepsie, New York, where it was stamped as "received" on December 7, 1972. In that letter Mr. Koslan asked that he be "kept advised in this matter." The summons and complaint were then mailed to the Syracuse office of the insurance company and were received there on December 8, 1972.

According to the affidavit of the Syracuse district claims manager "these suit papers did apparently turn up in Los Angeles on February 5, 1973." He did not state, however, when these papers were mailed to

Los Angeles, but said that he could "only speculate" that "these papers were possibly delayed in the mails or in some aspect of the paper handling that is so common to our business."

According to the affidavit of the Los Angeles district claims manager the complaint and summons arrived at that office "on February 5, 1973." According to his affidavit, they were "date stamped both in Poughkeepsie and Syracuse." A copy of that "date stamped" letter was attached to one of the affidavits. No letter or other documents showing a Los Angeles "date stamp" were submitted. Neither was the original or copy of any transmittal letter submitted.

During this interval, however, the four-week period for appearance had expired and on December 29, 1972, plaintiff filed a motion for an order of default, as well as a motion for a hearing on the amount of damages. That hearing was held on January 18, 1973, and on that date judgment was entered for $11,909.18 for the special damages incurred by plaintiff and for $75,000 in general damages. On that same day plaintiff's attorney wrote a letter to Mr. Barrett notifying him of the entry of the judgment. On or before February 1, 1973, he also informed Mr. Koslan, defendant's secretary, of that fact.

According to the affidavit of plaintiff's attorney, "between November 1, 1972, and January 18, 1973, no one contacted me on behalf of defendant or made any inquiry of me." He stated, however, that on January 19, 1973, he was informed by Mr. Barrett that the insurance company had assigned the case to Eugene attorneys and that on the same day he received a telephone call from one of them to say that "they would

in all probability be filing a motion to set aside the judgment on the grounds of a mistake, surprise or excusable neglect." He stated that he replied that he "would certainly resist any such motion to its fullest and that any delay in filing such a motion would be met by me raising the point of lack of diligence on the part of the defendant." To protect his client, however, plaintiff's attorney then filed a new action, with a proper summons and a complaint naming defendant in its correct name and correcting the inconsistency in the notice of time for appearance.

More than three months elapsed after the entry of the default judgment before defendant filed any appearance. On April 24, 1973, more than two years following the accident, defendant filed a Special Appearance, Motion to Quash and Motion to Set Aside Judgment on the grounds that the summons was defective and that the court had no jurisdiction, as previously discussed. That motion was denied on May 3, 1973. Defendant then, on May 14, 1973, filed a Motion to Reconsider its previous motion. That motion was denied on May 22, 1973.

Not until June 1, 1973, nearly four and one-half months after entry of the default judgment, did defendant file its Motion to Set Aside Default Judgment, attaching affidavits with the statements previously referred to, as well as an affidavit by one of defendant's attorneys stating, in addition to some of the same facts, as follows:

"III

"That this matter is obviously of a very serious nature, and any delay that has taken place between the time that the Default Judgment has been entered and the filing of the accompanying Motion to

Set Aside Default Judgment has been brought about by the desire to compile, develop and present to the Court the relevant important facts available to establish the setting aside of the default taken in the above-entitled matter.

### "IV

"That the persons and sources of facts relevant to the within Motion are located throughout the United States, and some natural delay was necessarily encountered as a result thereof.

### "V

"That contact was made by telephone and correspondence with Joel Reeder, attorney for the Plaintiff, by William G. Wheatley of our affiant's office on or about the 25th day of January, 1973, and on several occasions since that date, during which times Mr. Reeder was informed that this office represented Defendant and an attempt would be made to set aside the Judgment and Order of Default."

*Findings of Fact and Conclusions of Law by trial court.*

In denying defendant's motion for an order to set aside the default judgment, the trial court made findings of fact in which it reviewed the facts in detail and ended with a final finding that:

"* * * Defendant has not explained satisfactorily the delays in filing the Motion to Quash and Motion to Set Aside the Default Judgment."

As a conclusion of law the trial judge then stated:

"Defendant is not entitled to relief from the default judgment because of mistake, inadvertence, surprise or excuse by neglect. Defendant's insurance company, through its officers and agents was guilty of inexcusable neglect which is imputable to the defendant. Defendant has not exercised due diligence in seeking to have the judgment set aside. * * *"

*Under the facts of this case there was no abuse of discretion.*

■ Defendant has "summarized" its contention as follows:

> "* * * Defendant has met all the requirements necessary for the court to properly set such a default judgment aside and has made a sufficient showing of the grounds provided in ORS 18.160 such that it can be said that the trial court abused its discretion in denying defendant's motion. As a consequence, defendant has been unjustly denied his rightful day in court."

It may be that defendant made a sufficient showing so as to *justify* a trial court, in the exercise of its discretion, in setting aside the default judgment in this case. It does not follow, however, as defendant seems to contend, that the trial court abused its discretion in refusing to do so. On the contrary, we believe that this was a case in which the facts were such that a trial judge, depending upon his evaluation of the facts and in the exercise of his discretion, could properly deny defendant's motion.

Defendant says that it exercised diligence in filing its motion to set aside the default judgment and that there was no excusable delay in doing so. Again, we believe that, depending upon his evaluation of the facts of this case, the trial judge could properly make a finding to the contrary. The trial court was not required to accept at face value the statement of counsel that "any delay" in filing the motion to set aside the judgment was "brought about by the desire to compile, develop and present to the court the relevant facts," or that "the persons and sources of the facts relevant to the within motion are located throughout the United

States," even though there may have been "some delay" as a result of these facts.

Defendant emphasizes the fact that promptly after defendant's attorneys were informed in January of the entry of the default judgment they notified plaintiff's attorney that they would attempt to set aside that judgment. As previously noted, however, plaintiff's attorney stated that he then informed defendant's attorneys that he would not only resist such a motion, but that any delay in the filing of such a motion would be met by "raising the point of lack of diligence on the part of defendant."

It may be true, as also contended by defendant, that it was entitled to file a motion to quash before filing its motion to set aside the default judgment and that the time reasonably required to prepare and file the motion to quash was not an "inexcusable delay." Under the facts of this case, however, we hold that the trial court did not abuse its discretion in its finding that defendant did not show reasonable diligence in the filing of either its motion to quash or its motion to set aside the default judgment and in finding, on the contrary, that "defendant has not satisfactorily explained" the period of over four months which, according to defendant, was reasonably required for the filing of both motions, and in concluding that "defendant has not exercised due diligence in seeking to have the judgment set aside."

Defendant also contends that there was no evidence of inexcusable neglect by defendant's insurance company in its handling of the case prior to engaging defendant's present attorneys, but that "at the most, there is evidence of inadvertence, or excusable neglect."

Under the facts of this case, however, we do not believe that the trial court was required to accept the excuses offered for the delay by the insurance company and there was ample evidence to support its conclusion that this was not a case of "inadvertence or excusable neglect," but that, on the contrary, "defendant's insurance company, through its officers and agents was guilty of inexcusable neglect."

In addition, defendant contends that any negligence by the insurance company cannot properly be imputed to it. In support of that contention defendant cites cases in which default judgments have been set aside when a defendant has promptly delivered the summons and complaint to its insurer, but no appearance was made within the required time because of the negligence of the insurer.[9] It is true that under such circumstances some courts have set aside default judgments. It is also true that in some of such cases it has been held, under quite different facts, that such negligence by an insurer is not imputable to the insured. See *Hinz v. Northland Milk & Ice Cream,* 237 Minn 28, 53 NW2d 454 (1952). See also *Abrams v. Barnes,* 16 App Div 2d 936, 229 NYS2d 657 (1962).

Other courts have held to the contrary. Thus, in *Stevens v. Gulf Oil Corporation,* 108 RI 209, 274 A2d 163 (1971), the court held (at 164):

"Travelers' negligence is, we believe, imputable to Gulf. While Gulf argues that its insurer is not its agent, we disagree. It is clear that Gulf for-

[9] Cases cited by defendant include: Abrams v. Barnes, 16 App Div 2d 936, 229 NYS 2d 657 (1962); Stehman v. Reichhold Chemicals, Inc., 57 Ill App 2d 40, 206 NE2d 299 (1905); Johnson v. McIntyre, 80 Idaho 135, 326 P2d 989 (1958); Hobbs v. Martin-Marietta Company, 257 Iowa 124, 131 NW2d 772 (1964); and Hinz v. Northland Milk & Ice Cream, 237 Minn 28, 53 NW2d 454 (1952).

warded the summons and complaint to Travelers in pursuance of its insurance policy which gives the insurer control of the handling and adjustment of claims against the insured. In such circumstances, we shall adopt the principle that the insurer, by retaining control of suits brought against the insured, becomes the agent of the insured. Douglas v. United States Fidelity and Guaranty Co., 81 N.H. 371, 127 A. 708; Hayes v. Gessner, 315 Mass. 366, 52 N.E. 2d 968; Cowden v. Aetna Casualty and Surety Co., 389 Pa. 459, 134 A.2d 223; G.A. Stowers Furniture Co. v. American Indemnity Co. (Tex. Com. App.) 15 S.W.2d 544; Will v. Jessen, 273 Wis. 495, 78 N.W.2d 905; see 7A Appleman, Insurance Law and Practice § 4681 at 423-424; 3 Couch on Insurance 2d § 25:99 at 414."

To the same effect, see *Milks v. Clark's Greensboro, Inc.,* 260 NC 676, 133 SE2d 517, 518 (1963), and cases cited therein. See also *Hilker v. Western Automobile Ins. Co.,* 204 Wis 1, 231 NW 257, 259 (1930).

According to 7A Appleman, Insurance Law and Practice 423-24, § 4681 (1961):

"* * * It was * * * early stated that an insurer which elected to exercise its right to conduct the defense was not regarded as being an agent of the insured, but was rather in the position of an independent contractor. But the more modern rule is that under such a policy provision the insurer becomes the agent of the insured."

Appleman goes on to state, however (at 424, n. 5):

"* * * [T]he relationship is more complex than will fit precisely into one of the neat niches of the law, partaking in part of an agency relationship, in part of that of an independent contractor, in many respects that of a fiduciary. * * *"

See also 3 Couch on Insurance 2d 414, § 25:99 (1960).

It also appears that in deciding whether or not to set aside default judgments in cases in which no previous appearance has been made as a result of negligence by an insurance company much depends upon the facts of the particular case. See Annot., 87 ALR2d 870 (1963).

In *Burke v. Rachau*, 262 Or 323, 497 P2d 1154 (1972), in affirming the refusal of a trial court to set aside a default judgment, we held (at 337) that the conduct of an insurance adjuster, under the facts of that case, was imputable to both the insured and the insurance company.

Regardless, however, of whether the conduct of the insurance company personnel which were responsible for its failure to engage an attorney in time to file a timely appearance was imputable to the insured under the facts of this case, the decision by the trial court was not based solely upon that limited ground. Thus, the trial court found not only that *defendant's insurance company,* through its officers and agents, was guilty of inexcusable neglect, but also found that "*defendant* has not exercised due diligence in seeking to have the judgment set aside."

As previously stated, the default judgment was entered on January 18, 1973. The next day plaintiff's attorney received a telephone call from one of the attorneys assigned by defendant's insurance company to handle the case. No appearance was made by them, however, until April 24, 1973. As also previously stated, however, the trial court was entitled to find, under the facts of this case, that defendant did not satisfactorily explain this delay.

In addition, it appears from the record in this case that on February 1, 1973, defendant's secretary, upon whom the summons and complaint had previously been personally served, called one of the claims managers for the insurance company to say that he had been informed by plaintiff's attorney of the entry of the default judgment. Thus, it appears that defendant was aware at that time of the entry of the default judgment.

Under all of these facts, we hold that the record was sufficient to support the conclusion by the trial court that "defendant has not exercised due diligence in seeking to have the judgment set aside." This is not to say, of course, that defendant may or may not have a remedy against the insurance company. That question, however, is not before us in this case.

■ One final contention by defendant remains to be considered. Defendant points out that after its attorneys informed plaintiff's attorney of their intent to file a motion to set aside the default judgment, plaintiff filed a new action with a proper summons and complaint which correctly named the defendant. Thus, defendant contends that plaintiff would suffer no prejudice from either the quashing of the summons or the setting aside of the default judgment.

The sole issue to be decided on the motion to quash was one involving the jurisdiction of the court. The question whether or not plaintiff would or would not be prejudiced has no bearing on that question.

It is true, of course, that the issues raised by the motion to set aside the default judgment were not so narrowly confined and that prejudice or lack of prejudice to either party is a proper consideration in

deciding whether to grant or deny such a motion. Where, however, as in this case, the facts are such as to support findings by the trial court that the default judgment was not "taken against [a defendant] through [its] mistake, inadvertence, surprise or excusable neglect" but that, on the contrary, defendant "did not exercise due diligence in seeking to have the judgment set aside," we cannot properly find that a trial court has abused its discretion in refusing to set aside a default judgment because of the fact that the plaintiff may not be prejudiced by a setting aside of the judgment. Indeed, in many cases in which trial courts have refused to set aside default judgments the plaintiffs would not have been prejudiced in the sense that they would still have had an opportunity to have such cases tried on their merits.

For all of these reasons, we affirm the judgment of the trial court.

## ON PETITION FOR REHEARING

Jaqua & Wheatley and William G. Wheatley, Portland, for the petition.

TONGUE, J.

Defendant's petition for rehearing contends that this court did not decide its previous contention that the summons as served upon it was so fatally defective as to be insufficient to confer jurisdiction over it, but affirmed the order of the lower court denying its motion to quash the summons upon the ground that defendant had not shown that it suffered prejudice.

We agree that lack of prejudice does not provide a proper ground on which to deny a motion to quash a fatally defective summons. By our opinion in this case, however, we held, and now hold, that any defects in this summons were not of such a nature as to render it fatally defective and that the trial court properly held that it was sufficient to confer jurisdic-

McAllister, J., did not participate in this decision.

tion over defendant. See *State ex rel Kalich v. Bryson,* 253 Or 418, 421-23, 453 P2d 659 (1969).①

■ Defendant's petition for rehearing would also reargue its previous contention that the trial court abused "sound legal discretion" in denying the motion to set aside the default judgment. While members of this court, if sitting as trial judges, might have granted that motion, we cannot properly say that the trial judge abused "sound legal discretion" in denying that motion under the facts and circumstances of this case, particularly in view of the broad discretion conferred upon trial judges by the terms of ORS 18.160.

The petition for rehearing is denied.

---

① Defendant also says that the reference in our opinion to the dissenting opinion in State ex rel Kalich v. Bryson, 253 Or 418, 424, 453 P2d 659 (1969), is misleading. That reference, however, was made only in connection with the statement of a contention made in this case, and not in approval of that contention. Also, of course, since the decision in *Kalich* ORS 15.040 has been amended. See Oregon Laws 1971, ch 192.