Argued October 5, reversed and remanded November 26, 1976

WAGAR, *Respondent,*

*v.*

THE PRUDENTIAL INSURANCE COMPANY OF
AMERICA, *Appellant.*

(75-2360-L-3, SC 24371)

556 P2d 658

*Walter J. Cosgrave,* Portland, argued the cause for appellant. With him on the briefs were Frank H. Lagesen and Cosgrave & Kester.

*Fred J. Amundson* of Moore & Amundson, P.C., Medford, argued the cause and filed a brief for respondent.

McALLISTER, J.

## McALLISTER, J.

Plaintiff, Laurie Wagar, brought this action to recover on a policy of life insurance issued by defendant on the life of her deceased husband. An order of default and judgment were taken against the defendant. The defendant then filed a motion to set aside the order of default and the judgment. The trial court entered an order denying the defendant's motion. The defendant appeals from that order.

The sole question on appeal is whether the court erred in denying the motion to set aside the default judgment.

The following statement of facts is taken from the statement of facts in defendant's brief as supplemented by plaintiff's brief. On or about December 20, 1974 plaintiff's counsel talked on the telephone to Douglas Ann Munson, an attorney in the Law Department of Prudential Insurance Company in Los Angeles about plaintiff's claim. On December 23, 1974 plaintiff's attorney wrote a letter to attorney Munson stating that he was representing Laurie Wagar and that he was making a claim in her behalf for the benefits under a policy of insurance issued on the life of Thomas G. Wagar, his client's deceased husband. In his letter, plaintiff's attorney stated that he knew that defendant was investigating the possibility of suicide as a defense. Attorney Munson acknowledged Mr. Amundson's letter on January 7, 1975. Plaintiff's attorney also received a letter dated January 4, 1975 from Susan A. Frankel of defendant's Life and Health Division advising him that his letter of December 23, 1974 had been referred to her by Ms. Munson.

On October 21, 1975 the plaintiff's attorney filed this action in the circuit court for Jackson County alleging that plaintiff was the widow of Thomas G. Wagar and that as a result of his death she was entitled to the benefits of the policy of insurance issued to him.

[ 829 ]

On November 4, 1975 John A. Briece, defendant's agent for the service of process in Oregon was served in Multnomah county. On the same day he mailed the summons and complaint to defendant's law department in Los Angeles for assignment to its defense counsel in Oregon. The summons and complaint mailed by Mr. Briece were never received by the defendant's law department or any other department and neither defendant's Los Angeles attorneys nor its Oregon attorneys knew of the filing of this case.

Mr. Briece, the registered agent, did not know that the summons and complaint had not reached the Los Angeles office until he received a call from defendant's Oregon counsel asking if service had been made on him.

For many years it had been the practice of the Law Department of Prudential Insurance Company's Western Home Office in Los Angeles to telephone the office of defendant's attorneys Cosgrave & Kester and its predecessors immediately upon notice that any action, suit, or proceeding had been commenced against Prudential. This was to insure that appropriate appearances could be made or extensions of time for appearance be obtained in accordance with the rules of the court in which the proceeding had been commenced.

Over a period of 13 years the defendant's system for insuring that prompt answers were made to suits and actions filed against Prudential had never resulted in the taking of a default against Prudential.

On December 1, 1975, one week after the defendant's appearance was due, the plaintiff's attorney filed a motion for and obtained an order of default and judgment in the amount of $34,760, together with interest, plus attorney fees in the amount of $2,500. The order and judgment were taken ex parte and the proceedings were not recorded and no notice of any kind concerning the application for such default was forwarded to attorney Munson, to the Prudential

Insurance Company Law Department, or to any other department of the defendant.

The defendant learned of the default order and judgment for the first time on December 9, 1975 when the defendant's claim division in Los Angeles received a copy of the judgment from the plaintiff's attorney. The defendant's Los Angeles Law Department immediately telephoned defendant's Oregon counsel. Upon learning of the default judgment defendant's Oregon counsel took immediate steps to determine the circumstances under which the default was entered.

On December 26, 1975 the defendant filed a motion pursuant to ORS 18.160 to set aside the order of default and judgment upon the grounds that the order of default and judgment were entered against the defendant through its mistake, inadvertence, surprise, or excusable neglect.

Along with the motion to set aside the default judgment the defendant filed an answer consisting of admissions and denials together with two affirmative defenses. The first affirmative defense alleged that Thomas G. Wagar, in applying for the policy of insurance, failed to disclose material facts about his prior medical history which would have resulted in defendant's rejection of the application. The second affirmative defense alleged that the insured died as a result of suicide within two years from the date the policy was issued and that under such circumstances there would be no coverage under the policy.

At the hearing on defendant's motion to set aside the default Ernest A. Long, Associate Counsel in defendant's Law Department in Los Angeles, appeared and testified that he had been employed with the defendant for almost 14 years, that the practice used by the defendant for forwarding summonses and complaints had been followed since 1948 and that defendant had experienced no problems with the system.

[ 831 ]

On January 21, 1976 the trial court denied defendant's motion to set aside the default judgment.

∎ In denying the defendant's motion the court held that the loss of the complaint was a result of "negligence of the most extreme nature" and "inexcusable" solely because of the mailing of the summons and complaint "by ordinary first-class mail without registering or having some sort of follow-up" procedure.

ORS 18.160 provides that:

"The court may, in its discretion, and upon such terms as may be just, at any time within one year after notice thereof, relieve a party from a judgment, decree, order or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect."

As the above statute states, the decision whether to set aside a default is within the discretion of the court. This court has uniformly held that the decision of the trial court will only be reversed for an abuse of that discretion. *Fleetwood Investment v. Thompson,* 270 Or 584, 587, 528 P2d 518 (1974).

∎ This court has also uniformly held that the statute should be liberally construed. In *King v. Mitchell,* 188 Or 434, 214 P2d 993, 216 P2d 269, 16 ALR2d 1128 (1950), the court discussed the policy considerations involved in setting aside a default judgment and said:

"The discretion of which the statute speaks is a legal discretion to be exercised in conformity with the spirit of the law and in a manner to subserve and not to defeat the ends of justice. * * *

"The statute is to be construed liberally to the end that every litigant shall have his day in court and his rights and duties determined only after a trial upon the merits of the controversy. [Citing cases.]." 188 Or at 441-442.

In *Snyder v. Consolidated Highway Co.,* 157 Or 479, 72 P2d 932 (1937), this court said:

"As a general rule the court looks with more favor upon the application for relief of a defendant in default

than upon a similar application by a defaulted plaintiff: * * *

"In several decisions this court has construed this statute liberally to the end that every litigant shall have his day in court and his rights and duties determined only after a trial upon the merits of the controversy. In the case of *McFarlane v. McFarlane,* supra [45 Or 360, 77 P 837], where the lower court denied the motion to set aside the default decree, this court reversed the case, and, speaking by Mr. Justice Wolverton, at page 363, said:

'Ordinarily, if he presents reasonable grounds excusing his default, the courts are liberal in granting relief, for the policy of the law is to afford a trial upon the merits when it can be done without doing violence to the statute and established rules of practice that have grown up promotive of the regular disposition of litigation.'

"The same learned justice construed section 1-907, Oregon Code 1930, in *Thompson v. Connell,* supra [31 Or 2321, 48 P 467], at page 235, where we find recorded the following language:

'True, the grant of such relief rests within the discretion of the court, but the discretion here spoken of is an "impartial discretion, guided and controlled in its exercise by fixed legal principles;" "a legal discretion to be exercised in conformity with the spirit of the law, and in a manner to subserve and not to defeat the ends of substantial justice," and for a manifest abuse thereof it is reviewable by an appellate jurisdiction.' See also *Fildew v. Milner,* supra [57 Or 16]." 157 Or at 484-485.

■ Considered in the light of these authorities we think the trial court abused its discretion in denying the defendant's motion to set aside the judgment. Each case must be considered on its own facts. In this case the judgment was taken against the defendant through inadvertence or excusable neglect. Although the mail service may leave something to be desired, it is still the means of communication relied on by all segments of the population. We think the court erred in describing the use of the mail as "negligence of the most extreme nature."

[ 833 ]

Also in this case the defendant, when notified that the default judgment had been entered, acted promptly to investigate the matter and to file its motion to set aside the judgment. It also promptly filed an answer to the complaint which contained two affirmative defenses. Setting aside the default would not have caused plaintiff any significant delay in having her case tried on its merits. Under these circumstances the order denying the motion to set aside the default judgment is reversed and the case remanded for further proceedings not inconsistent with this opinion.

TONGUE, J., dissenting.

I dissent because I believe that the majority opinion represents a departure from the rule and the practice as adopted and applied by this court in a series of decisions over the last five years, particularly in its emphasis upon the right of a defendant to his "day in court." In that series of cases this court has affirmed the refusal by trial courts to set aside default judgments entered after the failure of defendants to enter appearances within the time required by statute because of what they claimed to be "excusable neglect" within the meaning of ORS 18.160. *See Lowe v. Institutional Investors Trust,* 270 Or 814, 817-19, 529 P2d 920 (1974); *Fleetwood Investment v. Thompson,* 270 Or 584, 587, 528 P2d 518 (1974); *St. Arnold v. Star Expansion Ind.,* 268 Or 640, 651-53, 659, 521 P2d 526, 522 P2d 477 (1974); *Rogue Val. Mem. Hosp. v. Salem Ins.,* 265 Or 603, 609, 510 P2d 845 (1973); *Stirling v. Dari-Delite, Inc.,* 262 Or 359, 363, 491 P2d 1168, 494 P2d 252, 498 P2d 753 (1972); *Burke v. Rachau,* 262 Or 323, 337-38, 497 P2d 1154 (1972); *Coleman v. Meyer,* 261 Or 129, 493 P2d 48 (1972).[1]

---

[1] In *Washington County v. Clark,* 276 Or 33, 37-38, 554 P2d 163 (1976), this court held that the trial court erred in refusing to set aside a default decree. The problem in that case, however, was not whether defendant had shown "excusable neglect" in failing to file an appearance, but that the

These cases state the familiar rule, as also stated by the majority, that this court will not reverse a trial court in its determination whether a defendant has made a sufficient showing to establish that his neglect was excusable in the absence of a "clear showing" of a "manifest abuse of discretion." Of more importance, however, is the fact that it is implicit in these cases that the "discretion" conferred by ORS 18.160 upon a trial judge to grant or deny a motion to set aside a default judgment has been construed to mean that the trial judge will not be reversed when there are any facts in the record from which he could reasonably find that the defendant failed to make a sufficient showing to establish that his neglect was "excusable," even though members of this court, if sitting as trial judges, might reach a contrary result.

An out-of-state plaintiff who sues an insurance company and mails a complaint and summons to the clerk of a court in Oregon by regular mail a few days before the expiration of the statute of limitations could expect no sympathy from the insurance company or relief from the court if that mail was delayed or miscarried. While that is by no means a perfect analogy, this trial court apparently concluded that an out-of-state insurance company which relied upon the regular mail for delivery to it by its registered agent in Oregon of an equally important document, i.e., a summons and complaint, without any additional pre-cautions or procedures, failed to exercise reasonable diligence in a degree commensurate with the import-ance of the occasion and in this day when it is common knowledge that regular mail is not infrequently delayed or miscarried. I am of the opinion that unless the above-cited cases are overruled or limited in their

plaintiff took a default judgment in breach of an agreement not to do so, with the result that "the integrity of the judicial process is blemished." We also noted that in "so deciding we are not digressing from the frequently stated principle: 'A motion to vacate an order of default and judgment under the provisions of ORS 18.160 is addressed to the sound discretion of the trial judge.'"

application, the rule as recognized and as applied in practice by this court in those cases during the past five years requires that we hold that this was not an abuse of discretion by the trial court.