## CIRCUIT COURT OF THE CITY OF ROANOKE

Sears, Roebuck and Co.

v.

Thomas L. Sayers, Jr., et al.

November 21, 1989

Case Nos. CH9000384, CH9000385, CH9000386,
CH9000387, CH9000388

By JUDGE JACK B. COULTER

In these consolidated actions, Sears, Roebuck and Co., (hereinafter called Sears), seeks the intervention of equity to set aside five default judgments entered against it by this Court on December 14, 1988. These judgments were subsequently converted into liquidated damages totalling $97,500 after an evidentiary hearing on February 8, 1989. The Sayers family had been the victims of a fire on January 8, 1986, which they claim was caused by a defective heating blanket bought from Sears and manufactured by Northern Electric Company (hereinafter called Northern). Sears brought these actions pursuant to § 8.01-428(C) of the Code of Virginia of 1950 and the inherent equity powers of the court. The thrust of its poignant appeal is that the notices and motions for judgment in the five personal injury tort and products liability cases, though properly and legally served on its statutory registered agent in Richmond, were not in fact received by it in Chicago. That they were properly mailed from Richmond is conceded.

Sayers's attorney, Jeffrey H. Krasnow, (hereinafter called Krasnow) had filed suits against Sears and Northern on January 6, 1988, two days before the statute of limitations would have run. Courtesy copies of his motions for

judgment were mailed and received by Sears's law department. Krasnow advised Sears, however, that service of the suit papers was being withheld as principal responsibility for the allegedly defective blankets was being focused on Northern. Subsequently, however, Northern went into bankruptcy which prompted Krasnow to write Sears on July 12, 1988, advising them that service of the suit papers was now being put in process. They were, in fact, served on Sears's registered agent on July 22, 1988, who forwarded them on that date to Sears requesting acknowledgment of receipt. No acknowledgment was ever sent back to the registered agent. All persons at Sears responsible for receiving and distributing incoming mail have testified that the material forwarded by the registered agent was never received.

The clash of principles has been dramatically generated by the Complainant's moving appeal to the conscience of this Court. There are notions of fairness in conflict here that beget no quick or easy solution.

Contrary to the Respondents' contention, this Court clearly has jurisdiction to hear Sears's petition. Such is the historic function of the Court of Equity -- to correct injustices that the harsh rule of law might have provoked. It is the "X" in the jurisprudential formula of justice, $L + X = J$, that is enshrined on the book being held by the majestic Statue of Justice in the Atrium of our Courthouse. The law does not always render justice. Sometimes something must be added to or taken away from the law in order to yield the justice sought by all. Such was the cry of Antigone, the plea of Portia and the message of Billy Budd. $L + X = J$. And the X in the case at bar is Equity.

On the one hand, as urged by the Complainant, is the polestar principle that everyone should have his day in court; that due process -- substantive as well as procedural -- requires notice and demands the right to be heard; that resolution of disputes on the merits is the desired objective of every controversy. In addition, Sears also argues that the Court erred in allowing damages for emotional distress to one of the Sayers' children when he was not at home at the time of the fire and hence had received no physical injury.

But the Respondents counter with the call for finality; that judgments at law should not be disturbed for light or transient reason; that appeals to equity and notions of fairness should not be granted merely to gratify the spirit of litigation or to overcome one's own derelictions. And that the Court was fully aware that Todd Sayers was not at home when the fire occurred but had accepted the testimony of a psychologist as to the reality of the claim.

It is always disturbing to the conscience of any court that any injustice might have been done by hasty or precipitous action. Yet it is of equal concern to any court to penalize one who has scrupulously complied with all technical requirements of the law and has gone beyond those technicalities in giving additional notice of the action being taken. Reference, of course, is made to the significant facts (1) that the claimants' attorney sent courtesy copies of his motions for judgment to Sears on January 6, 1988, and (2) that he notified Sears on July 12, 1988, that service of the motions was being initiated.

The rule most applicable to the issue at hand, referred to by both parties, is well stated by Barton in his 1881 edition of *Chancery Practice*:

> Equity will not interfere merely because injustice may have been done at law; [and]
> [Relief will be granted] when it is shown that the reason why the defence was not made was founded in fraud, accident, surprise, or some adventitious circumstances *beyond the control of the party*. (Emphasis added.)

Or as stated by Justice Staples in *Green & Suttle v. Massie*, 62 Va. (21 Gratt.) 357, 358 (1871):

> Courts of equity relieve against judgments at law upon the ground that the party injuriously affected thereby has a defence of which he might have availed himself, but was prevented by fraud or accident, *unmixed* with *any* fault or neglect on his part. (Emphasis added.)

There is no fraud in this case, and any surprise was attenuated by the claimants' "extracurricular" notices.

Hence, it is only accident or adventitious circumstances -- and they are synonymous -- that can be legitimately advanced.

The ultimate test, then, is *not* the possible strength of any potential defenses; it is not the possibility, however strong, that the trial court might have misapplied the law or was overly generous in his award or was overwhelmed by emotion or the persuasive capacities of the Respondents' attorney. The threshold question, the overwhelming consideration, the litmus test, then, is pure and simply put: Was Sears free of *any* fault or neglect on its part?

The law of agency as it relates to the imputation of an agent's knowledge to his principal, as urged by the Respondents, is of little relevance to the case at bar. The agent's conduct and performance is not the telling test, although had his procedure requiring acknowledgment been implemented, Sears would not have defaulted. The test is -- to state it again -- was Sears *in any way* at fault. Was the failure to receive notice beyond the control of Sears? Was any neglect of Sears excusable?

Sears's paramount contention must first be addressed. It is emphasized most vigorously that the notices and motions for judgment were never received. This may well be true. It is clearly one possible and realistic explanation and is conceded by the Respondents in their brief (see page 4). But there are also several other equally realistic possibilities that Sears has chosen to ignore. These papers could have been received and misfiled; they could have been lost after receipt; they could have been the victim of computer malfunction or a janitor's sweep or a miss-hit of the in-bin or a fall-out from their mail mobile. The fact that they were not returned to the sender raises a presumption of receipt.

The allegation that these papers were not received is regrettably not subject to adversarial scrutiny. The representation is totally self-serving and totally incontestible. It is negative evidence similar to the automobile driver at a railroad crossing who claims he did not hear the whistle. How do you prove that he did? Such evidence is so susceptible to manipulation and manufacture that it cannot be accepted with enthusiastic embrace, for how can it be contradicted.

But non-receipt is assumed for the purposes of this decision. It is a given, just as are the suggestions of a strong defense, over-generosity, and misapplication of the law. Still, has Sears been totally free of fault? That is the critical and crucial test!

After wrenching reflection and in all good conscience, this Court cannot find that it is. Sears is not totally free of fault. In this miracle age of instantaneous communication -- with fax and the modem -- it is simply inexcusable for a party of Sears's magnitude, resources, and capacity not to have devised a fail-safe system. Registered mail would have avoided the dilemma that they have created for themselves; responsible attention to the notices being given gratuitously by the claimants' attorney would have prevented the default; due diligence to the claims being presented would have resulted in their having their opportunity to have been heard. The result -- whether unjust or not -- is not "unmixed with any fault or neglect" on the part of Sears.

The precedent that sustaining the plea of Sears would set is also of such disturbance that mention of it is justified. How many doors would be open by allowing a defendant against whom a default judgment had been obtained to come into court and say that notice of the suit, though duly served, had not been received. The sanctity of the system would be substantially crippled. There would be no finality of judgment; litigation would be endless. And if allowed for default judgments, then similar consideration should be available for missing arbitrary appellate deadlines or overlooking statutes of limitations.

As noted by the dissent in *Wagar v. Prudential*, 556 P.2d 658 (Ore. 1976), "An out-of-state Plaintiff who sues an insurance company and mails a complaint to the Clerk of a Court by regular mail a few days before the expiration of the statute of limitations could expect no sympathy from the insurance company or relief from the court if that mail was delayed or miscarried." Symmetry of the law demands its equal application. Such Plaintiffs too are denied their day in court and their right to be heard.

That hard cases make bad law, one of Holmes's great maxims, has application to the case at bar. It is a hard

case that imposes on Sears liability and damages without being heard on the merits. But to reopen the controversy under the facts and circumstances of these cases would make bad law, and the grace of equity in this Court's sympathetic discretion has not been earned to justify its intervention.

The clash of principles provoked by this appeal to equity are resolved in favor of the Sayers. Judgment accordingly.